J-S36014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| TERRELL WRIGHT | |
| Appellant | No. 3106 EDA 2015 |

Appeal from the PCRA Order September 18, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011742-2008

BEFORE: PANELLA, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, J. **FILED August 4, 2017**

Appellant, Terrell Wright, appeals from the order entered on September 18, 2015, in the Court of Common Pleas of Philadelphia, denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Wright raises four allegations of the ineffective assistance of trial counsel.[1] We affirm.

---

[1] The only transcript initially in the certified record was the verdict from April 12, 2010. Trial started on April 6. Obviously, we need more than just a transcript of the verdict to resolve four claims of the ineffective assistance of trial counsel.

It is an appellant's responsibility to ensure that the certified record contains all the items necessary to review his claims. *See*, *e.g.*, ***Commonwealth v. Tucker***, 143 A.3d 955, 963 (Pa. Super. 2016). And the Rules of Appellate Procedure provide for this by requiring an appellant to order and pay for any transcript necessary to permit resolution of the issues raised on appeal. *See* Pa.R.A.P. 1911(a). Indeed, the rule provides a suggested form for an
*(Footnote Continued Next Page)*

appellant to use. ***See id***., at (c). Furthermore, the Court of Common Pleas of Philadelphia County has issued a local rule of judicial administration that provides that an appellant must request a transcript using a "Transcript Order Form." ***See*** Phila. County L.R. 5000.5(a). When a litigant is requesting the transcript for the purpose of an appeal, the form must be filed with the trial court as well as with the Prothonotary of the appropriate appellate court. ***See id***., at (c)(2)(i, x).

  Appellant has privately retained counsel, Norris E. Gellman, Esquire, and Margeaux Cigainero, Esquire. And Appellant's counsel have not complied with Rule 1911 nor with Rule 5000.5. Instead, counsel simply carbon copied the court reporter on the notice of appeal. ***See*** Notice of Appeal, filed September 30, 2015.

> When the appellant … fails to conform to the requirements of Rule 1911, any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review. It is not proper for either the Pennsylvania Supreme Court or the Superior Court to order transcripts nor is it the responsibility of the appellate courts to obtain the necessary transcripts.

***Commonwealth v. Preston***, 904 A.2d 1, 7 (Pa. Super. 2006) (*en banc*) (internal citations omitted).

  Despite the dictates of ***Preston***, we examined the lower court docket entries and confirmed that transcripts were filed of record for the direct appeal. As such, we had our deputy prothonotary contact the lower court's prothonotary to inquire about the transcripts. The next day, the lower court electronically filed the transcripts with this Court.

  We also have to mention the reproduced record counsel filed. It consists of just *twelve* pages of the prosecutor's closing argument. We refer counsel to Pa.R.A.P. 2152(a). Also, counsel have failed to append a copy of the PCRA court's opinion to their brief in violation of Pa.R.A.P. 2111(b).

  Frankly, counsels' actions in their failure to follow the rules are simply unacceptable.

We assume the parties' familiarity with the facts and the procedural history of this case, which we describe only as necessary to explain our decision. We refer an interested reader to the PCRA court's decision, **see** PCRA Court Opinion, filed 7/25/16, and to this Court's decision from the direct appeal, **see Commonwealth v. Wright**, 2430 EDA 2010, at 1-4 (Pa. Super., filed May 7, 2012) (unpublished memorandum).

A jury convicted Wright of first-degree murder, attempted murder, aggravated assault, and possession of an instrument of crime. The trial court imposed an aggregate term of imprisonment of life without the possibility of parole. The convictions stem from Wright's fatal shooting of Jarrett Washington and the wounding of Sherrieff Watkins.

Wright filed a direct appeal. And we affirmed his judgment of sentence. Our Supreme Court denied Wright's petition for allowance of appeal. Wright, through privately retained counsel, timely filed a PCRA petition, raising claims of the ineffective assistance of trial counsel. The PCRA court issued a Rule 907 notice of its intention to dismiss without a hearing. Wright filed objections, but the court subsequently dismissed the petition. This timely appeal follows.

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (internal citations omitted).

All four of Wright's issues allege the ineffective assistance of trial counsel. We assume counsel's effectiveness and Wright bears the burden of proving otherwise. *See Commonwealth v. Pond*, 846 A.2d 699, 708 (Pa. Super. 2004). To do so, Wright must establish, by pleading and proving, the underlying issue has arguable merit, counsel's actions lacked an objective reasonable basis, and actual prejudice resulted from counsel's act or failure to act. *See Commonwealth v. Rykard*, 55 A.3d 1177, 1190 (Pa. Super. 2012). A failure to satisfy any prong of the test will require rejection of the entire claim. *See Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014).

"Arguable merit exists when the factual statements are accurate and could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination." *Commonwealth v. Barnett*, 121 A.3d 534, 540 (Pa. Super. 2015) (citation omitted). As explained below, Wright is unable to establish this prong in three of his claims. And the final claim we find waived for the failure to cite any authority.

Wright's first issue on appeal takes exception to trial counsel's failure to object to the trial court's instruction on "demeanor evidence." Appellant's Brief, at 11. The pertinent portion of the jury charge is set forth below.

> You, as the jury, must consider and weigh the testimony of each witness and give it such weight as in your judgment it is fairly entitled to receive. The matter of the credibility of a witness, that is whether his or her testimony is believable and accurate in

- 4 -

whole or in part[,] is solely for your determination. I'll mention some of the factors that might bear on that determination.

Whether the witness has any interest in the outcome of the case or has friendship or animosity toward the other persons concerned in the case, *the behavior of the witness on the witness stand*, *and his or her demeanor, his or her manner of testifying*, and whether he or she showed any bias or prejudice which might color his or her testimony, the accuracy of his or her memory and recollection, his or her ability and opportunity to acquire knowledge of or to observe matters concerning which he or she testified, the consistency or inconsistency of his or her testimony or inconsistency with any prior statement, as well as its reasonableness in light of all the evidence in the case.

N.T., Trial, 4/9/10, at 97-98 (emphasis added).

Wright objects to the emphasized language. **See** Appellant's Brief, at 11. According to Wright, trial counsel should have objected to the instruction as it invited the jurors "to make outcome determinative credibility determinations based on how the witness appeared while testifying – a judgment based solely on personal predilections with no standards imposed to guide those predilections." **Id**. Simply put, that the jurors could have voted to convict based simply on their not liking a particular witness. This, Wright contends, "violated due process of law under the federal constitution." **Id**., at 14.

For this sweeping assertion, Wright provides no conclusive citation to authority—from any jurisdiction. **See id**., at 14-19. He simply cites to

- 5 -

general principles on evidentiary inferences and concludes it should be so.[2] One wonders how trial counsel was supposed to have lodged an objection when Wright, on collateral review, is unable to identify any authority, from anywhere, to support his position. In any event, due process requires "that, where demeanor evidence is critical, the ultimate factfinder in a criminal case must hear the witnesses on whose testimony his findings will be based." *United States v. Raddatz*, 447 U.S. 667, 695 n.1 (1980) (Marshall, J., dissenting) (citation omitted). That happened here.

What Wright really advances in this collateral proceeding is a suggestion that the law should be changed, calling it "laughable" in its current form. Appellant's Brief, at 16. But we must assess trial counsel's effectiveness "under the law in existence at the time of trial," not according to Wright's novel argument. *Commonwealth v. Spotz*, 896 A.2d 1191, 1210 (Pa. 2006). And we turn next to scrutinize the disputed jury instruction by examining the pertinent law.

---

[2] Wright further makes the claim that this alleged error constitutes a structural defect. Again, this claim has absolutely no support in case law. The United States Supreme Court has identified the following, and *only* the following, as structural defects: the complete denial of counsel, the denial of the right of self-representation, the denial of the right to public trial, the denial of the right to trial by jury by the giving of a defective reasonable-doubt instruction, and the erroneous disqualification of a criminal defendant's choice of retained counsel. *See Commonwealth v. Sandusky*, 77 A.3d 663, 671 (Pa. Super. 2013).

"It is solely the province of the trier of fact to pass upon the credibility of witnesses and to give it such weight as may be accorded to the evidence therein produced. The factfinder is free to believe all, part or none of the evidence." *Commonwealth v. Shaver*, 460 A.2d 742, 745 (Pa. 1983) (citations omitted). And to help the jurors assess credibility, trial courts often read § 4.17 Credibility of Witnesses, General, of the Pennsylvania Suggested Standard Criminal Jury Instruction.

The trial court's instruction in this case largely tracks the standard instruction. *Compare* N.T., Trial, 4/9/10, at 97-98, *with* Pa. SSJI (Crim) § 4.17. And our Supreme Court has given its imprimatur to § 4.17. *See Commonwealth v. Snoke*, 580 A.2d 295, 299 (Pa. 1990) ("These instructions provided the jury with those factors that are properly considered in ascertaining credibility.")

Wright especially objects to the trial court's reference to "demeanor." It means "[t]he way in which one behaves or conducts oneself." Webster's II New College Dictionary 300 (1995). It is true that § 4.17 does not specifically use the word "demeanor" in the instruction. But it is implicitly considered in the instruction. *See* Pa. SSJI (Crim) § 4.17(1)(d) ("Did the witness testify in a convincing manner? [How did [he] [she] look, act, and speak while testifying?") (brackets in original). And our Supreme Court has instructed that

the question of whether a particular witness is testifying in a truthful manner is one that must be answered in reliance upon

- 7 -

inferences drawn from the ordinary experiences of life and common knowledge as to the natural tendencies of human nature, *as well as upon observations of the demeanor* and character of the witness.

*Commonwealth v. Seese*, 517 A.2d 920, 922 (Pa. 1986) (citing *Danovitz v. Portnoy*, 161 A.2d 146, 149 (Pa. 1960) ("In determining the weight to be attached to the testimony of a witness it is proper to consider his appearance, general bearing, conduct on the stand, *demeanor*, manner of testifying, such as candor or frankness, or the clearness of his statement, and even the intonation of his voice.")) (emphasis added).[3]

The trial court's instruction was legally sound. There was no basis for trial counsel to object. And "[c]ounsel will not be deemed ineffective for failing to raise a meritless claim." *Spotz*, 896 A.2d at 1210 (citation omitted).

Wright's next two issues assert trial counsel's ineffectiveness for failing to object to certain of the prosecutor's statements during closing arguments.

> In accord with the long-standing principle that a prosecutor must be free to present his or her arguments with logical force and vigor, this Court has permitted vigorous prosecutorial advocacy as long as there is a reasonable basis in the record for the [prosecutor's] comments. Prosecutorial comments based on the evidence or reasonable inferences therefrom are not objectionable, nor are comments that merely constitute

---

[3] Indeed, there is a suggested standard jury instruction for the trial court to provide before the testimony of witnesses, instructing the jurors to "[o]bserve each witness as he or she testifies" when judging credibility. Pa. SSJI (Crim) § 2.04(2). The trial court provided that instruction. *See* N.T., Trial, 4/6/10, at 22.

oratorical flair. Furthermore, the prosecution must be permitted to respond to defense counsel's arguments. Any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered.

…

The standard by which the court considers allegations of improper prosecutorial comments is a stringent one:

> Comments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict.

**Commonwealth v. Hutchinson**, 25 A.3d 277, 306-307 (Pa. 2011) (all citations and quotation marks omitted; brackets in original).

Wright first objects to the portion of the prosecutor's closing argument, which he claims, "posited a clash of cultures" where one culture has a "credo of 'no snitch'" while the other is "law abiding." Appellant's Brief, at 22.

At trial, there were two key witnesses, Sherrieff Watkins and Eddie Moody. The night before the shooting, they had assaulted Wright's brother. Shortly after the shooting, both signed statements identifying Wright as the shooter, but, at trial, both denied knowing who shot the victim. In response to this surprising testimony, the Commonwealth had detectives read the signed statements to the jury.

"Snitching" featured prominently in both the Commonwealth's, **see** N.T., Trial, 4/6/10, at 38, 41-42, and the defense's theories of the case. In

his opening, defense counsel stated, "[t]he defense side in the story is, yes, there was a fight. It wasn't over any theft of a gun. It was over supposedly my client and others saying that Sharrieff [sic] Watkins was a snitch." **Id**., at 47. And "snitching," not surprisingly, came up throughout the rest of the trial.

Watkins testified that he used the word "snitching" at the hospital, but would not admit when asked by the prosecutor, "snitching means that you know who the doer is but you ain't telling, right?" **Id**., at 220. Officer Tyric Armstead testified that after the shooting he observed Watkins, who had been shot in the arm, and heard him say, "I'm not snitching. I'm going to handle it." N.T., Trial, 4/7/10, at 14. Officer Jason Reid testified that Watkins stated, "I know who shot me, but I ain't no snitch." **Id**., at 152.

Importantly, Wright's trial counsel argued during his closing argument that the only evidence to believe from Watkins and Moody were their testimonies given under oath and in open court, as their signed statements were not sworn. **See** N.T., Trial, 4/9/10, at 42.

And so, with that background, during her closing argument, the prosecutor said this:

> Eddie Moody himself, the entire time, okay, when he goes south, it's an interesting south, it's like selective memory; I remember this part, I remember this part, I did say this, yes, Ma'am, I said that, but no, I don't remember this, I don't remember that, I don't remember that. He never said he didn't say it. He never said Detective Marano put those words in his mouth. He just had selective memory loss, and to those parts

- 10 -

that he had memory loss to was those parts that only affected [Wright's] name and his take in this whole thing.

What does common sense tell you about that? Come on, folks. It doesn't take a law degree, it doesn't take 15 years of trying homicide cases to figure this out. You guys are all probably smarter than me when it comes to half the things in this world, but it doesn't take much to realize when people go south, they go south for a reason. And the reason why they both went south is because – *I don't know, something's happening in the neighborhoods*.

N.T., Trial, 4/9/10, at 71-72 (emphasis added). At this point, defense counsel stated, "[o]bjection." **Id**.[4] The trial court overruled the objection and the summation continued:

I can't explain it. *This no-snitch culture, but the law is smart*. The law responds to what is happening out there, and *the law says that we are not going to let that culture take over what's happening in the courtroom*. *We can't*. And that's why you're going to hear an instruction from the Judge that says that that statement read in by Detective Marano and Detective Lucke can be considered as substantive evidence. You may use that for the truth in determining whether this defendant is guilty.

**Id**., at 72 (emphasis added).

Wright objects to the emphasized portions of the charge, arguing that "[b]y making this issue a clash of cultures, the prosecutor literally created a significant bias – by the law – in favor of police statements vis a vis recanted trial testimony." Appellant's Brief, at 23. That is a stretch. And that is simply not what happened here.

_____

[4] The efficacy of this *general* objection was null. **See Sandusky**, 77 A.3d at 670-671.

As explained above, we cannot view the comments in isolation, but must view the prosecutor's closing argument in its entirety. It is obvious the prosecutor was making the comments about "snitching" and its "culture" in fair response to the evidence presented at trial, to the defense's theory of the case, and the defense's closing argument. It also explains to the jury the Commonwealth's theory of Watkins's and Moody's refusal to identify the shooter, despite each having signed statements identifying Wright.

"There are many reasons why a witness says one thing outside of court, and another thing when on the stand. One common reason why witnesses in criminal cases change their accounts at trial is fear of reprisal[.]" *Commonwealth v. Brown*, 52 A.3d 1139, 1189 (Pa. 2012) (Castille, then-C.J., concurring and dissenting). This gets at the heart of "snitching" and its "culture" and it is what, as noted above, the prosecutor was explaining to the jury in this case. (After all, there is the old adage, "snitches get stitches," whose popularity is amply demonstrated by Googling that phrase.)

As the prosecutor did not commit misconduct in her closing argument, we cannot find that trial counsel provided ineffective assistance by failing to raise an effective objection to it.

Wright next claims trial counsel provided ineffective assistance for failing to object to the prosecutor's "testimony" during her closing argument

and giving her opinion about Wright's motivation after Watkins and Moody assaulted his brother. We disagree.

The prosecutor stated:

> The night before, 24 hours before the shooting, when with his brother at his own corner, Lambert and Maderi, he was beaten up, by Sherrieff Watkins and Eddie Moody. Not only was he beaten up, but his younger brother, Shizz, was beaten up. That is one of the strongest motives you'll ever hear in a criminal case.
>
> His younger brother, his sibling was beaten up at his own intersection at his own corner. He couldn't even get the respect that he so wanted at his own corner, and on top of being beaten up, his own sibling is being beaten up. Have you ever been so angry before than seeing one of your own family members hurt? I was telling this story to my sister, my younger sister, and we grew up in Upstate New York and she keeps reminding me, and I don't know why she tells this story but probably because of the nature of my job, but she likes to remind me of stupid things that I used to do when I was a kid. But when I told her this story she reminded me of a story when we got into a little altercation, my sister and I, with another girl in the playground. And they, growing up in Upstate New York, there weren't many Asians back in the early 1980s. And I remember this girl said something to my sister and called her a name. And she didn't call me the name but she called my sister the name, and I was probably only about ten pounds lighter than I am now, but about as tall as I am now, but I went over to that girl who was a good five, six inches taller than me and at least twenty pounds more, and I grabbed her by the hair and I literally took her to the ground and forced her to apologize to my sister. The insult to my sister was so egregious that I took more offense to that than my sister did. Maybe you understand it, maybe you don't, I don't know, but I can certainly understand what the defendant was feeling when on his own corner his younger brother was beaten up by two guys that didn't belong at that corner.

N.T., Trial, 4/9/10, at 74-76.

Wright maintains the unavoidable effect of the prosecutor's statements was to prejudice the jury. Did these statements about the prosecutor's protection of her sibling, when they were children, form in the jurors' minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict? No. The prosecutor's statements were nothing more than rhetorical flair. This claim has no merit.

In fact, it is worth noting that defense counsel referred to his own family to illustrate points in support of his theory of the case. *See* N.T., Trial, 4/6/10, at 57; N.T., Trial, 4/9/10, at 46.

In his final issue on appeal, Wright asserts trial counsel's ineffective assistance in failing to request

> jury instructions that would have informed the jury that when statements are made under coercive circumstances so their voluntariness is questionable, the reliability and accuracy of such statements is called into question and if the jury finds such coercive circumstances, the jury should regard such statements with great caution before accepting them for the truth of their content.

Appellant's Brief, at 32-33.

Wright, however, after casting aspersions on trial counsel's representation, fails to cite any authority to support this assertion. We find the claim waived. *See Commonwealth v. Hunzer*, 868 A.2d 498, 516 (Pa. Super. 2005) (finding claim waived where appellant "has failed to cite any legal authority whatsoever in support of this argument"). And "an appellant's

belief that a court's instructions should contain additional explanation or his chosen dicta will not render a jury charge defective." ***Id***. (citations and internal quotation marks omitted).

Order affirmed.

President Judge Emeritus Ford Elliott joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/4/2017