J-S41037-16

2016 PA Super 157

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAN TUCKER, | |
| Appellant | No. 1411 EDA 2015 |

Appeal from the Judgment of Sentence April 17, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008242-2013

BEFORE:  BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:                    **FILED JULY 19, 2016**

Daniel "Dan" Tucker ("Appellant") appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County after a jury convicted him of third-degree murder, two counts of attempted murder, aggravated assault, possession of an instrument of crime ("PIC"), and two counts of violation of the Uniform Firearms Act ("VUFA"). Sentenced to consecutive sentences aggregating to a 35 to 70-year term of incarceration, Appellant challenges the legality of his sentence, the sufficiency of evidence pertaining to attempted murder, the denial of his motions for mistrial and continuance to conduct DNA testing of evidence, respectively, and an evidentiary ruling permitting the Commonwealth to introduce a witness's prior statement to bolster his testimony.  We affirm

_____
*Former Justice specially assigned to the Superior Court.

Appellant's convictions but are compelled to vacate judgment of sentence and remand for resentencing consistent with this decision.[1]

The trial court aptly summarizes the factual history of the case as follows:

> On January 5, 2013, five members of the Philadelphia Chapter fo the Wheels of Soul Motorcycle Club met at their West Philadelphia clubhouse before traveling together to Chicago to attend the funeral of another club member. They returned to the clubhouse at approximately 5:40 A.M. on Sunday, January 6, 2013 and parked at 61st and Market Street near the door of the clubhouse located at 6114 West Market Street in the City and County of Philadelphia. The street was quiet and other than the returning club members, Appellant was the only person observed on the street. Appellant was known to club member Richard Motes, Jr. ("Motes"), also known as "Ricky" or "Raw Dawg," because Appellant, though not a member, had come to the Wheels after-hours club for years. Appellant, after exchanging greetings with Motes, pulled a gun and opened fire on the men as they attempted to enter the club.
>
> Appellant shot Nezzer Pankey ("Pankey") also known as "Nezz" in the face. Motes was shot in the right thigh. Rodney Turner ("Turner") also known as "Rock" was also one of the returning travelers and he was shot four times during this same incident. Turner was shot two times in the neck, one time in the buttock, and another bullet grazed his left chest. Appellant ran out of bullets and fled down Dewey Street. Members of the club who were in the clubhouse at the time exited once the gunfire ceased, and some began to run in the direction of the Appellant. Other members who emerged from the clubhouse transported Pankey and Turner to the Hospital of the University of Pennsylvania. Appellant was not apprehended on the night of the incident. Motes was not immediately aware that he had been shot, and Police officers who arrived on the scene transported Motes to the Hospital of the University of

---

[1] Both parties agree that Appellant's VUFA sentence exceeds the statutory maximum and is, thus, an illegal sentence. **See** discussion *infra*.

- 2 -

Pennsylvania. Motes gave a statement to homicide detectives and was able to identify Appellant from a photo spread. Turner was able to identify Appellant as the shooter from a photo spread and in court but did not identify Appellant during a pretrial line up. Pankey did not survive.

Pankey was pronounced dead at 6:53 P.M. on January 6, 2013. Pa[n]key was shot one time in the left side of the face, where the bullet entered his brain. An autopsy performed by Chief Medical Examiner Dr. Gary Collins found that Pankey's cause of death was a penetrating gunshot wound to the left side of the head. The manner of death was found to be homicide.

[Mahogany] Livingston ("Livingston") was at the Wheels after-hours club in the early morning hours of January 6, 2013. As she arrived, Appellant, who[m] she recognized from the neighborhood, was being ejected from the club by some of the club members. She remained in the club until about 5:00 A.M. then she went to her home which was nearby. Upon arrival at home, Livingston realized that she did not have her cell phone so she returned to the club to look for it. When she arrived at the club it was about 5:30 A.M. At this time Livingston observed a male on the corner with his hands in the pocket of his hooded sweatshirt and she saw an imprint of a gun. She recognized this male was the same one who had been ejected from the club earlier that evening. When Livingston entered the club she was unable to locate her phone but told club members that she had seen a man outside with a gun. Livingston heard gunfire outside of the club shortly after her arrival there. Livingston was unable to make a positive identification of Appellant at the pretrial lineup.

At trial, [Aaron] Burnett ("Burnett"), who was working security at the door of the Wheels club, testified that he and another member had, in fact, removed Appellant from the club on the night of the shooting because Appellant had become unruly. Upon leaving, Appellant said, "I will be right back." An arrest warrant was issued for Appellant and he was located at the home of his ex-girlfriend Brianna Poole ("Poole") and taken into custody without incident on April 10, 2013.

Trial Court Opinion, filed November 13, 2015, at 3-5.

Appellant's six-day jury trial culminated with a verdict of not guilty on the charge of first-degree murder and guilty verdicts on the remainder of charges, as noted *supra*. After the court imposed sentence, Appellant filed no post-sentence motion, but he filed a timely notice of appeal to this Court. He subsequently complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and the trial court filed a responsive Rule 1925(a) opinion.

Appellant raises the following five issues for our review:

1. Did the lower court impose an illegal sentence by sentencing Appellant to five to ten years for a felony of the third degree, a violation of Section 6106 of the Uniform Firearms Act?

2. Did the lower court err and deprive Appellant of a fair trial, by denying a defense motion for a mistrial after the Assistant District Attorney stated in a question to a witness that Appellant previously "went to jail"?

3. Was the evidence insufficient to sustain a conviction for two counts of attempted murder, as the Commonwealth failed to prove that Appellant had a specific intent to kill?

4. Did the lower court err and violate Appellant's constitutional rights to a fair trial and to present a defense by denying a continuance to conduct DNA testing of a knife recovered from the scene of the crime, testing that was not done previously because the Commonwealth provided the property receipt for the knife the day before trial?

5. Did the lower court err and violate the Rules of Evidence by permitting the Commonwealth to bolster a witness by introducing the witness's prior hearsay statement on direct examination?

- 4 -

Appellant's brief at 4-5.

Appellant first contends that his five to ten year sentence imposed for VUFA at 18 Pa.C.S. § 1103(3) exceeds the statutory maximum of seven years' incarceration for a felony of the third degree and, therefore, represents an illegal sentence. For its part, the Commonwealth agrees that this aspect of Appellant's sentence is illegal, may be raised for the first time on appeal, and requires remand for resentencing.

> The scope and standard of review applied to determine the legality of a sentence are well established. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.

*Commonwealth v. Leverette*, 911 A.2d 998, 1001–1002 (Pa.Super. 2006) (citations omitted). A challenge to the legality of a sentence:

> is essentially a claim that the trial court did not have jurisdiction to impose the sentence that it handed down.... A trial court ordinarily has jurisdiction to impose any sentence which is within the range of punishments which the legislature has authorized for the defendant's crimes.

*Commonwealth v. Cappellini*, 690 A.2d 1220, 1226 (Pa.Super. 1997), (quoting *Commonwealth v. Catanch*, 581 A.2d 226, 228 (Pa.Super. 1990)).

The statutory maximum penalty for a third degree felony is seven years' incarceration. 18 Pa.C.S. § 1103(3). Thus, we concur that the sentence imposed for VUFA is illegal as it exceeded seven years. We,

therefore, vacate the sentence for VUFA and remand for resentencing consistent with Section 1103(3).

Appellant next asserts that he was denied a fair trial when the prosecutor read for a witness, Brianna Poole, a transcript of her pre-trial interview with investigators which included her statement that Appellant previously "went to jail." N.T. 2/5/15 at 115. The prosecutor's act was particularly egregious, Appellant maintains, because the trial court had reminded the prosecutor just moments earlier to avoid reading answers that referred to Appellant's previous time in jail. See N.T. at 112.

A motion for mistrial is the appropriate means by which to challenge prosecutorial misconduct. Pa.R.Crim.P 605(B).[2] The following standards govern our review:

> In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether

_____

[2] Pa.R.Crim.P. 605(B) provides: "When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity."

misconduct or prejudicial error actually occurred, and if so, ... assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with the law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

*Commonwealth v. Jaynes*, 135 A.3d 606 (Pa.Super. 2016) (quoting *Commonwealth v. Lettau*, 955 A.2d 360, 363 (Pa.Super. 2008), *reversed on other grounds*, 986 A.2d 114 (Pa. 2009) (citations, quotations, and quotation marks omitted)).

The Commonwealth responds that Appellant failed to preserve this issue with a timely and specific objection during the witness's testimony. The notes of testimony confirm that defense counsel first raised the issue with the trial court only after the testimonies of Ms. Poole and a subsequent witness were completed. While defense counsel requested and was granted an unrecorded sidebar discussion after Ms. Poole completed her testimony and was excused as a witness, there is no indication that counsel lodged an objection at that time. Appellant does not claim to have made an objection at such time, nor does the trial court, in its Pa.R.A.P. 1925(a) opinion, indicate that counsel raised the issue at any time prior to moving for mistrial after the ensuing witness completed his testimony.

"[T]he failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue." *Commonwealth v. Houck*, 102 A.3d 443, 451 (Pa.Super. 2014).

- 7 -

This Court has previously held that the failure to object to testimony at the time it was given precluded a subsequent motion for mistrial lodged only after the witness was excused and the court took a recess:

> In the present case, Appellee's counsel did not object immediately after Appellant's witness mentioned insurance; rather, he waited until after Appellant finished the direct examination, after he conducted a cross examination, and after a brief redirect and recross. At that point, the court took a short recess during which time both attorneys approached the bench, and Appellee's counsel purportedly objected to the testimony. Unfortunately, this bench conference was not transcribed. Although Appellee claims he moved for a mistrial at that time (Appellee's Brief at 3 n. 1), the trial judge does not remember such a motion. (Trial Ct.Op. at 2). Instead, the judge recalls that they discussed a curative instruction, which he subsequently gave during the jury charge. *See* N.T., 4/23-24/01, at 393 ("There was some mention of insurance in this case and the fact that one or both of the parties may or may not be covered by a policy of insurance is of absolutely no relevance to you in this matter.").
>
> Appellee argues that its objection, although not immediate, was timely, in that it gave the trial court the opportunity to correct the error. *See Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114, 115 (1974). Appellee explains that it did not object immediately for two reasons: (1) it did not want to draw further attention to the testimony, and (2) the comment was isolated, so there was no continuing wrongdoing by the witness. *See* Appellee's Brief at 3. The trial court agreed, concluding that the "slight delay" between the testimony heard midmorning and the motion for mistrial requested midafternoon, did not render the objection untimely. (Trial Ct.Op. at 3).
>
> We disagree. In order to preserve an issue for appellate review, an aggrieved party must make a **timely** and specific objection. []. **Here, Appellee failed to object to Simpson's reference to insurance when it was uttered, but rather waited until after Simpson had completed his testimony on direct, cross, redirect and recross. This was too late.** *See Wilkerson v. Allied Van Lines, Inc.*, 360 Pa.Super. 523, 521

A.2d 25, 30 (1987), ***appeal dismissed as improvidently granted***, 518 Pa. 61, 540 A.2d 268 (1988), ***cert. denied***, 488 U.S. 827, 109 S.Ct. 78, 102 L.Ed.2d 54 (1988) (finding objection to witness' hearsay testimony during direct examination untimely when appellant's counsel failed to object until after he had begun cross examination). Moreover, as our Supreme Court stated in ***Harman*** [***ex. rel. Harman v. Borah***, *562 Pa. 455, 756 A.2d 1116, 1124 (2000)],* "[w]hile we can accept counsel's concern about further alerting the jury, we find no justification for counsel's inertia." ***Id.*** at 1126 (finding objection untimely when appellant's counsel failed to object to trial court's off-the-record conversation with appellee's expert until one hour after incident, even though court entertained motions on other issues during intervening recess). Accordingly, because Appellee failed to lodge a timely objection to Simpson's testimony, the trial court should have found the issue waived.[]

***Allied Elec. Supply Co. v. Roberts***, 797 A.2d 362, 364-65 (Pa.Super. 2002). ***See also Commonwealth v. Boring***, 684 A.2d 561, 568 (Pa.Super. 1996) (deeming motion for mistrial made subsequent to sustained objection untimely when deferred until conclusion of witness testimony a considerable length of time after prejudicial remark occurred); ***Commonwealth v. Smith***, 410 A.2d 787, 790–91 (Pa. 1980) (request for mistrial because of witness's reference to polygraph test untimely when made approximately two or three minutes after the allegedly prejudicial statement).

The case *sub judice* falls squarely under ***Allied Elec. Supply Co.***, as Appellant waited until the completion of direct examination and cross-examination of both Brianna Poole and the next witness before it first objected to the reference to Appellant's prior incarceration with its motion

for mistrial. Under our jurisprudence, this was simply too late to lodge an objection to the direct examination of Ms. Poole.[3]

Moreover, we concur with the trial court's unsympathetic response to the motion where the reference in question appeared in Appellant's discovery packet, giving Appellant ample notice of its potential disclosure and, thereby, ample opportunity to file a motion *in limine* to have the reference redacted. **See** N.T. 2/5/15 at 163-64. Indeed, in **Smith**, **supra**, the Pennsylvania Supreme Court made such an observation under similar circumstances:

> Appellant next claims the trial court erred in not granting a mistrial when the Commonwealth's witness made references to the appellant's willingness to take a polygraph examination. We agree with the trial court's decision.

---

[3] As noted *supra*, defense counsel approached the bench after the conclusion of Ms. Poole's testimony, but the sidebar discussion was unrecorded. Notwithstanding that we would, in any event, deem an objection made after the witness had left the stand untimely pursuant to **Allied Elec. Supply Co.**, we note it is unascertainable from the record whether defense counsel actually made such an objection during sidebar discussion. Neither Appellant nor the trial court, moreover, suggest that defense counsel lodged an objection at this time. "It is settled that it is Appellant's responsibility to ensure that this Court has the complete record necessary to properly review a claim." **Commonwealth v. Kleinicke**, 895 A.2d 562, 575 (Pa.Super.2006) (*en banc*). "The law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal." **Commonwealth v. Preston**, 904 A.2d 1, 6 (Pa.Super. 2006). Therefore, with no record evidence that such an objection was made, we deem Appellant's motion for mistrial the first objection voiced to the court.

The prosecutor, at trial, during direct examination of the detective who interrogated the appellant at the Police Administration Building, asked the witness to give a chronological narrative of the interrogation. When the testimony reached the point at which appellant had made the incriminating statement, admitting participation in the crime and denying he shot Officer Daniels, the witness was requested to read the statement into the record. The challenged reference to the polygraph examination was part of this statement and came on the seventh and last page of the statement. Defense counsel did not move for a mistrial at that time. He waited approximately two or three minutes, until the prosecutor finished direct examination and the court called a recess before making the motion for mistrial.

Pa.R.Crim.P. 1118(b)[4] provides: "When an event prejudicial to the defendant occurs during trial, only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity." (emphasis added). **See Commonwealth v. Riggins**, 478 Pa. 222, 386 A.2d 520 (1978).

**Since the challenged testimony came in the context of a recital of the contents of the defendant's confession, a document with which defense counsel was thoroughly familiar, defense counsel could have requested an advance deletion of the polygraph reference. When, as here, the asserted error is one that could readily have been anticipated and avoided, the defendant's explanation for noncompliance with Pa.R.Crim.P. 1118(b), that counsel wished to avoid compounding the alleged prejudices, is hardly persuasive.**

**Smith**, 410 A.2d at 790-91 (emphasis added). In light of the foregoing precedent, we find the court's denial of Appellant's motion for mistrial appropriate.

---

[4] Now Pa.R.Crim.P. 605(b).

Appellant next contends the evidence was insufficient to support his convictions for attempted murder, as the Commonwealth failed to prove he acted with a specific intent to kill. His argument in this regard first focuses on what he calls the inconsistent verdicts of acquittal of first-degree murder charges for the death of Nezzer Pankey and convictions on attempted murder for the shooting of Richard Motes in the leg and Rodney Turner in the neck. He also maintains that, at the very least, the conviction based on the shooting of Mr. Motes in the leg must be overturned because the leg is not a vital part of the body.

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011).

- 12 -

Criminal attempt is defined as follows:

**(a) Definition of attempt.**—A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step towards the commission of that crime.

18 Pa.C.S. § 901(a). "For a defendant to be found guilty of attempted murder, the Commonwealth must establish specific intent to kill." ***Commonwealth v. Geathers***, 847 A.2d 730, 734 (Pa.Super. 2004). Therefore, "[i]f a person takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act, he may be convicted of attempted murder." ***In re R.D.,*** 44 A.3d 657, 678 (Pa.Super. 2012). "The Commonwealth may establish the *mens rea* required for first-degree murder, specific intent to kill, solely from circumstantial evidence." ***Id.*** Further, our Supreme Court has repeatedly determined that "[t]he use of a deadly weapon on a vital part of the body is sufficient to establish the specific intent to kill." ***Commonwealth v. Rega***, 933 A.2d 997, 1009 (Pa. 2007); ***see also Commonwealth v. Cousar***, 928 A.2d 1025, 1034 (Pa. 2007) ("a specific intent to kill may be inferred from the use of a deadly weapon on a vital part of the victim's body.").

Viewing all the evidence admitted at trial in the light most favorable to the verdict winner, we conclude Appellant's argument that the evidence was insufficient to support his attempted murder conviction for shooting Motes fails. For example, Richard Motes recounted how Appellant not only fired a shot straight through the largest part of Motes' thigh during the shooting

spree but also fired two more shots that Motes felt go past his head. N.T. 2/3/15 at 59-60. It was Motes' opinion that Appellant believed that both Pankey and he were dead at that point, prompting Appellant to turn his attention to Rodney Turner. N.T. at 60-61. It was therefore reasonable for the jury to infer from the totality of such circumstances a specific intent to kill Motes.

Appellant's contention that the verdicts acquitting Appellant of the first-degree murder of Pankey and convicting him of attempted murder of Motes and Turner were inconsistent with respect to the *mens rea* element and, therefore, reversible, is likewise misdirected, for the only pertinent question regarding the attempted murder verdicts is whether sufficient evidence supported them. As our Supreme Court recently observed on the question of inconsistent verdicts:

> The question before us implicates the general issue of inconsistent verdicts, which, under longstanding federal and state law, are allowed to stand so long as the evidence is sufficient to support the conviction. **See Dunn v. United States**, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932) (holding that "[c]onsistency in the verdict is not necessary" and refusing to allow inconsistent verdicts to be upset by "speculation or inquiry" into the possibility of compromise or mistake on the part of the jury); **United States v. Powell**, 469 U.S. 57, 58, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (applying **Dunn**'s rule, which the Court explained as follows: "a criminal defendant convicted by a jury on one count could not attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count"). In affirming a verdict of aggravated assault and battery, despite the jury's acquittal of the accused on a separate count of assault and battery, this Court reiterated that "[a]n acquittal cannot be interpreted as a specific finding in relation to some of the evidence."

- 14 -

> ***Commonwealth v. Carter***, 444 Pa. 405, 282 A.2d 375, 376
> (1971) (citation omitted). Rather, an acquittal of a charge for
> which there was sufficient evidence for conviction is an occasion
> of a "jury's assumption of a power which [it] had no right to
> exercise, but to which [it was] disposed through lenity." ***Id.***
> (citation omitted).

***Commonwealth v. Miller***, 35 A.3d 1206, 1208-09 (Pa. 2012).

There is no question the evidence was sufficient to support the jury's verdicts of guilt on the charges of attempted murder in this case. Accordingly, we view Appellant's sufficiency challenge as baseless.

In Appellant's fourth issue, he declares the court erroneously denied his request for a continuance—made on the first day of trial—to permit him to conduct DNA testing of a knife recovered from the crime scene. According to Appellant, he was not made aware of the precise location of the knife at the crime scene until the day before trial, when he received a property receipt for the knife. Appellant concedes, however, that he knew for approximately one year before trial of the presence of the knife at the scene, but did not know its precise location. The precise location was critical to his defense, he claims, because it was recovered from the area where eyewitnesses observed the shooter running away. DNA test results excluding him could have supported the defense theory that someone else committed the shooting, he posits.

After hearing argument from both sides, the trial court denied Appellant's motion because "the request did not comply with the 48-hour

- 15 -

requirement of Pa.R.Crim.P. 106(D)[5] and the opportunity to conduct the DNA testing existed long before the start of trial." Trial Court Opinion, at 6. "There were no allegations that a knife was in any way involved in this case and there were several witnesses who placed Appellant at the scene of the crime[,]" the court reasoned. ***Id.***

Our standard of review is well-established.

A decision to grant or deny a continuance rests within the sound discretion of the trial court. We will not reverse a trial court's decision absent a showing of abuse of that discretion or prejudice to the defendant. [A]n abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record.

***Commonwealth v. Flor***, 998 A.2d 606, 620 (Pa. 2010) (citations and internal quotations omitted).

Based on our review of the record, the arguments presented by Appellant, and relevant case law and statutes, we find no abuse of discretion in the trial court's denial of a continuance. With the circumstances

---

[5] Rule 106, "**Continuances in Summary and Court Cases**," provides in pertinent part:

(D) A motion for continuance on behalf of the defendant shall be made not later than 48 hours before the time set for the proceeding. A later motion shall be entertained only when the opportunity therefor did not previously exist, or the defendant was not aware of the grounds for the motion, or the interests of justice require it.

Pa.R.Crim.P. 106(D).

surrounding the shooting severely undermining the relevance of the knife to Appellant's defense, and given Appellant's failure to pursue information regarding the knife despite knowing of its existence for approximately one year, the court was well within its province under Rule 106(D) to deny Appellant's noncompliant request for a continuance. We discern no error with this ruling.

Finally, Appellant charges the court with error for permitting the Commonwealth to introduce into evidence the prior statement Richard Motes gave at the police station as an accompaniment to the testimony Motes had just provided about giving a statement to police after he had been discharged from the hospital. Specifically, during trial, Motes testified that police had sequestered his hospital room so that he could talk to no visitors prior to giving police a statement. Once discharged and taken to the station, Motes testified, he gave an oral statement while a detective reduced it to writing. N.T. at 80.

He testified to telling investigators that he knew Appellant for years from coming in and out of the club, and he described how he selected Appellant's photo instantly from an array of six pictures: "right off, I mean, it didn't take a few seconds, I said, 'This is the guy," and I circled, put my name over top [sic] of it." N.T. at 81. At that time, the prosecutor asked to display the written statement for identification, to which the defense objected given the clear ability of Mr. Motes to remember his statement. N.T. at 81. The court overruled the objection, deeming it a fair response to

defense counsel's opening remarks calling eyewitness identifications unreliable. The court, therefore, allowed the prosecution to present evidence that Mr. Motes had been consistent in his identification from the beginning of the case.

Mr. Motes first authenticated the statement as the one written in his presence as he spoke to investigators, and the court allowed its admission into evidence. N.T. at 83. The prosecutor then asked Motes to either comment on different parts of his three-page statement or read directly from it, and Motes essentially reiterated what he had said earlier in his testimony. At one point, after reading a sentence in which he again confirms knowing Appellant from the clubhouse and distinguishing Appellant's light-skinned cousin who frequently accompanies Appellant at the clubhouse, Appellant immediately provides the following remark independent of the written statement:

> **A:** Yes. He [Appellant] comes in all the time. We shake their hand. You know, they know us, we shake their hand all the time. We greet them, that is how I know him very well. I didn't talk to anyone. I didn't know what was going on, but I recognized him at that corner and when he pulled the gun out.

N.T. at 88.

Evidence of a prior consistent statement by a witness is admissible for rehabilitation purposes under the Pennsylvania Rules of Evidence if "the opposing party is given an opportunity to cross-examine the witness about the statement, and the statement is offered to rebut an express or implied charge of fabrication, bias, improper influence or motive, or faulty memory

- 18 -

and the statement was made before that which has been charged existed or arose." Pa.R.E. 613(c)(1). In her opening remarks, defense counsel advanced the theory that the Wheels of Soul motorcycle club to which Richard Motes and other eyewitnesses belonged had conspired to accuse Appellant falsely of shooting their club members:

> **DEFENSE COUNSEL:** Listen, this is a seriously close-knit band of brothers. After the shooting happened, they met. They decided whether they were going to –whether they wanted to talk to the police and what they were going to tell them. They met. They didn't just come forward. And I am going to talk about that in a minute. They met to make a determination, what are we going to tell the police, and then they sent orders down to the members of their club about what to say. You're going to hear about that. Members got orders from above. And what they figured was, the people outside, nobody got a good look at who the shooter was. It was dark. You're going to listen to the circumstances under which they were able to look at the shooter, and none of them got a good look at that person. But they went into the bar, they figured out, hey, you know that guy we threw out, here is his cell phone and here's his picture with his child right on the phone. And when they finally made a determination about what they believed, you know, what they were guessing happened, they put down the order, and that's what people were to follow.

N.T. at 38-39.

Because defense counsel expressly charged Motes and the other members of the Wheels of Soul witnesses with fabrication, bias, and improper motive in their implication of Appellant in the shooting, it was permissible under Pennsylvania Rule of Evidence 613(c)(1) to rehabilitate the credibility of Richard Motes as a witness by admitting his prior consistent statement—allegedly given to police before he had any contact with his club

members—in rebuttal of the conspiracy theory offered by the defense. Accordingly, we find no error with the court's admission of the prior consistent statement of Richard Motes.

For the foregoing reasons, we affirm Appellant's convictions but vacate judgment of sentence and remand for resentencing on Appellant's VUFA conviction consistent with this decision.

Judgment of sentence vacated; case remanded for resentencing. Jurisdiction is relinquished.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/19/2016