J-S14030-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANDREA MAZZELLA | : | |
| | : | |
| Appellant | : | No. 2738 EDA 2018 |

Appeal from the Judgment of Sentence Entered July 6, 2018
In the Court of Common Pleas of Carbon County Criminal Division at
No(s):  CP-13-CR-0000649-2016

BEFORE:   LAZARUS, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:                     **FILED MAY 13, 2019**

Appellant Andrea Mazzella appeals from the judgment of sentence imposed following his convictions for driving under the influence (DUI)– general impairment – second offense, reckless driving, and improper use of a motorcycle learner's permit.[1]   Appellant's counsel has filed a petition to withdraw and an **Anders**/**Santiago**[2] brief.   We affirm and grant counsel's petition to withdraw.

The trial court summarized the relevant facts and procedural background as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. §§ 3802(a)(1), 3736(a), and 1505(c), respectively.

[2] **Anders v. California**, 386 U.S. 738 (1967); **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

On March 19, 2016, Mahoning Township Police Officer Corey Frey ([Officer Frey]) was called to an area on Mahoning Drive West in the Township of Mahoning, County of Carbon, for a motorcycle accident. Based upon his investigation, on April 18, 2016, [Officer] Frey filed a criminal complaint against [Appellant] alleging that he had violated several sections of the Pennsylvania Vehicle Code namely: 1) 75 Pa.C.S.A. § 3802(a)(1)-Driving Under the Influence; 2) 75 Pa.C.S.A. § 3736(a)-Reckless Driving; 3) 75 Pa.C.S.A. § 3309(1)-Disregard Traffic Lane; and 4) 75 Pa.C.S.A. § 1505(c)-Improper Use of Motorcycle Learner's Permit.

After all charges were bound over to court, [Appellant] filed a motion to suppress any evidence referencing the fact that [Appellant] had refused a blood test. A stipulation and orders were filed on September 23, 2016 that granted the motion and precluded the Commonwealth from seeking enhanced criminal penalties should the case ever proceed to sentencing. Additionally, this change[d] the grading of the DUI offense from a misdemeanor of the first degree to an ungraded misdemeanor and a loss of [Appellant's] right to a jury trial.

Ultimately on June 11, 2018, a bench trial was held,[3] the Commonwealth presented two witnesses, namely Matthew Ruch (hereinafter "Ruch") and [Officer] Frey himself. Ruch testified that on March 19, 2016 around 2:00 A.M. in the area of Gypsy Hill Road and Mahoning Drive, he observed a "cloud of dust." He also observed a single person standing near a motorcycle which was laying on the ground in a dirt lot near Heintzelman's Meat Market. After passing the scene, Ruch, a trained EMT, turned around and asked this person, who he identified [at trial] as [Appellant], if he was okay. Ruch testified that [Appellant] said he "wrecked his motorcycle, but don't call the police. He ([Appellant]) was fine." Ruch further indicated that in the process of conversing with [Appellant], [Appellant] exhibited poor balance and was slurring his words.

At that point[,] Ruch left the immediate area and drove his vehicle into the parking lot area of Gypsy Hill Gardens where he called 911. Upon exiting this parking lot area, he noticed [Appellant] on the bike and now travelling further into Mahoning Township. Ruch then began to follow [Appellant] and observed him swerving three (3) to four (4) times within his lane of travel from the double

---

[3] Appellant did not testify.

yellow center lines to the white fog line. In the process of doing this, Ruch testified that [Appellant] was almost struck by a tractor trailer. Shortly thereafter, Ruch observed [Appellant] stall the motorcycle at which point, [Appellant] motioned for Ruch to go around him, which Ruch did. Ruch then proceeded down the road but pulled into the parking lot of a nearby business. From here, Ruch observed [Appellant] resume his erratic driving before [Appellant] pulled into the New England Motor Freight parking lot some five hundred (500) feet away from Ruch. Ruch remained in this parking lot until the Mahoning Township Police arrived.

The Commonwealth next called [Officer] Frey to testify. [Officer] Frey stated that he received a call for the report of an accident near Heintzelman's Meat Market. While travelling there, he received additional information that the motorcycle and its driver were now in the New England Motor Freight parking lot. Upon arriving at that location, [Officer] Frey observed an individual seated on a motorcycle with the light on. As the officer arrived, [Appellant] got off the bike, shut it off and began walking away. [Officer] Frey testified that he observed [Appellant] drop "something." [Officer] Frey, upon observing facial injuries, asked [Appellant] if he was okay and [Appellant] responded that he was okay, but that it wasn't his bike. [Officer] Frey eventually stopped [Appellant] from walking away and upon confronting him notice[d] slurred speech and smelled alcohol coming from [Appellant]. [Appellant] refused to perform field sobriety tests. [Officer] Frey, believing [Appellant] was driving this motorcycle under the influence of alcohol, placed him under arrest. [Appellant] then asked [Officer] Frey if he could pick up his keys. [Appellant] further stated that it was his bike and that it was stolen from outside of Ruby's Bar and that [Appellant], upon learning that it was stolen, chased down the "thief" and caught up with him in the New England Motor Freight parking lot. [Officer] Frey then took [Appellant] to Gnaden Huetten Memorial Hospital for a blood draw. At the hospital, [Appellant] refused the blood test and in doing so stated three to four times, "I wasn't driving, so I'm not giving blood."

Lastly, the Commonwealth presented a copy of [Appellant]'s motorcycle learner's permit and a copy of his JNET record to confirm his license status.

[Appellant] presented one witness, Richard Gould, who testified that he too was at Ruby's around 2:00 A.M. on March 19, 2016 where he was able to see [Appellant] leave the bar with a friend

- 3 -

to chase down whoever it was that had stolen [Appellant]'s motorcycle and that he recently came forward in [Appellant]'s defense because he recently heard, in that same bar, the bartender and others talking about this very incident.

At the conclusion of the testimony, [the trial court] found [Appellant] guilty of driving under the influence, reckless driving and improper use of a motorcycle learner's permit. [Appellant] was found not guilty of disregard traffic lane. . . . On August 24, 2018, [Appellant] was sentenced to a period of incarceration of not less than thirty (30) days nor more than six (6) months on the DUI charge as well as the mandatory fines on the two traffic offenses of reckless driving and improper use of motorcycle learner's permit.

Trial Ct. Op., 10/18/16, at 1-6.

Appellant filed a timely notice of appeal on September 7, 2018. On September 10, 2018, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal. Appellant timely filed a Rule 1925(b) statement on September 21, 2018, and asserted that there was insufficient evidence to establish that he operated the motorcycle. On October 18, 2018, the trial court filed a responsive Rule 1925(a) opinion.

In his **Anders**/**Santiago** brief, counsel identifies two issues for appellate review. Specifically, counsel includes challenges to the weight and the sufficiency of the evidence supporting Appellant's convictions. **Anders/Santiago** Brief at 5.

Because counsel has filed a petition to withdraw pursuant to **Anders/Santiago**, we must first address counsel's petition before reviewing the merits of the appeal. **Commonwealth v. Goodwin**, 928 A.2d 287, 290

(Pa. Super. 2007) (*en banc*). Counsel must comply with the technical requirements for petitioning to withdraw by (1) filing a petition for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) providing a copy of the brief to Appellant; and (3) advising Appellant that he has the right to retain private counsel, proceed *pro se*, or raise additional arguments that Appellant considers worthy of the court's attention. **See id.**

Additionally, counsel must file a brief that meets the requirements established by the Pennsylvania Supreme Court in **Santiago**, namely:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361. Only after determining that counsel has satisfied these technical requirements, may this Court "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citations and footnote omitted); **accord Commonwealth v. Yorgey**, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*).

Counsel has complied with the procedures for seeking withdrawal by filing a petition to withdraw, sending Appellant a letter explaining his rights,

and supplying Appellant with a copy of the **Anders**/**Santiago** brief.[4] **See Goodwin**, 928 A.2d at 290. Moreover, counsel's **Anders**/**Santiago** brief complies with the requirements of **Santiago**. Counsel includes a summary of the relevant factual and procedural history, refers to the portions of the record that could arguably support Appellant's claims, and sets forth the conclusion that the appeal is frivolous. Counsel explains his reasoning and supports his rationale with citations to the record and pertinent legal authority. Therefore, counsel has complied with the technical requirements for withdrawal, **Santiago**, 978 A.2d at 361, and we will independently review the record to determine if any non-frivolous issues are raised. **See Flowers**, 113 A.3d at 1250.

Initially, we note that counsel identifies a challenge to the weight of the evidence in the **Anders**/**Santiago** brief. **See Anders**/**Santiago** Brief at 5. However, Appellant failed to raise any objection to the weight of the evidence in the trial court. Therefore, a challenge to the weight of the evidence has been waived. **See** Pa.R.Crim.P. 607(A) (stating that a defendant must first raise a weight claim with the trial court in a motion for new trial before

---

[4] The record reflects that counsel initially failed to include with his withdrawal petition a copy of his letter to Appellant advising him of his right to retain new counsel or proceed *pro se*. **See Commonwealth v. Millisock**, 873 A.2d 748, 751-752 (Pa. Super. 2005) (stating that the prudent course is to require counsel to attach to the petition to withdraw a copy of the letter sent to the client advising of his or her rights). On January 22, 2019, this Court entered an order directing counsel to furnish a copy of the letter. **See** Order, 1/22/19. That same day, counsel complied with our order, and filed a copy of his January 11, 2019 letter to Appellant. **See** Response to Order, 1/22/19.

sentencing or in a post-sentence motion); *see also Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009) (holding that the appellant waived a weight of the evidence challenge because the appellate court has nothing to review when the appellant fails to preserve the claim in the trial court).

Counsel also discusses the sufficiency of the evidence that Appellant was the operator of the motorcycle. *Anders/Santiago* Brief at 5. Counsel notes that only Ruch claimed to have seen Appellant operating the motorcycle. *Id.* at 6-7. Counsel explains that, based on Ruch's identification alone, there was sufficient evidence to find that Appellant operated the motorcycle. *Id.*

Our standard of review for sufficiency claims is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.

*Commonwealth v. Tucker*, 143 A.3d 955, 964 (Pa. Super. 2016) (brackets and citation omitted).

The trier of fact, "while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." **Commonwealth v. Orr**, 38 A.3d 868, 873 (Pa. Super. 2011) (*en banc*) (citation omitted). "[E]vidence of identification need not be positive and certain to sustain a conviction. . . . Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight." **Id.** at 874 (citations and quotation marks omitted). Thus, allegations of conflicts in evidence regarding identification are more properly classified as challenges to the weight of the evidence. **Commonwealth v. Furness**, 153 A.3d 397, 404 (Pa. Super. 2016).

To sustain a conviction for DUI–general impairment under Section 3802(a)(1), the Commonwealth must prove that "the accused was driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered incapable of safely doing so due to the consumption of alcohol." **Commonwealth v. Segida**, 985 A.2d 871, 879 (Pa. 2009); **see** 75 Pa.C.S. § 3802(a)(1). Additionally, the Pennsylvania Supreme Court has explained that

> The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two hour time limit for measuring blood alcohol level does not apply. Blood alcohol level is admissible in a subsection 3801(a)(1)

case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol-not on a particular blood alcohol level.

*Segida*, 985 A.2d at 879.

To sustain a conviction for reckless driving under Section 3736(a), the Commonwealth must prove that an individual drove a vehicle, and that he did so "in willful or wanton disregard for the safety of persons or property." 75 Pa.C.S. § 3736(a). A person acts recklessly if he or she "consciously disregards a substantial and unjustifiable risk" of injury to others. 18 Pa.C.S. § 302(b)(3). "Moreover, driving under the influence of an intoxicating substance does not establish recklessness *per se*; there must be other tangible indicia of unsafe driving to a degree that creates a substantial risk of injury that is consciously disregarded." *Commonwealth v. Jeter*, 937 A.2d 466, 468 (Pa. Super. 2007) (citation omitted).

To establish improper use of a motorcycle learner's permit, an individual must be shown to have violated one of the provisions of Section 1505(c), which states that "[a] motorcycle learner's permit entitles the person to whom it is issued to operate a motorcycle only between sunrise and sunset and, except for a driver licensed to drive another class of vehicle, only while under the instruction and immediate supervision of a licensed motorcycle operator." 75 Pa.C.S. § 1505(c).

Here, the trial court concluded that the evidence was sufficient to establish that Appellant was the operator of the motorcycle. Specifically, the court explained:

> In the case *sub judice*, Ruch observed, a single individual, [Appellant], standing near a motorcycle in a dirt parking lot in a cloud of dust. [Appellant] told Ruch, he "wrecked his bike." Several moments later, Ruch, after calling 911 and turning his vehicle around in a nearby parking lot, saw this same motorcycle being driven away. Ruch followed it, watched [Appellant] stall it, then drive it to the shoulder of the road to allow Ruch to pass him. Then, Ruch, after parking in a lot owned by a nearby business, watched as the same individual, [Appellant] drove the same motorcycle into the New England Motor Freight parking lot.
>
> Officer Frey also saw [Appellant] on the same motorcycle in the New England Motor Freight parking lot when he arrived on scene. [Appellant] alit from the motorcycle upon [Officer] Frey's presence in that lot and tossed the key before being confronted by [Officer] Frey.
>
> Clearly, the Commonwealth's evidence, based upon the observations of the two (2) Commonwealth witnesses, places [Appellant] as the driver of the motorcycle on Mahoning Drive in Mahoning Township, Carbon County on March 19, 2016.

Trial Ct. Op., 10/18/18, at 7-8.

Based on our review of the record, we agree with the trial court that the Commonwealth presented sufficient evidence to prove that Appellant operated the motorcycle beyond a reasonable doubt. **See Tucker**, 143 A.3d at 964. Further, it was for the trial court as fact-finder to evaluate the credibility of the witnesses, and it concluded that Ruch's identification of Appellant was credible. **See Orr**, 38 A.3d at 873-84. Accordingly, we concur with counsel's conclusion that a sufficiency challenge on this basis is frivolous.

- 10 -

Although arguably waived by his Rule 1925(b) statement, we add that there was ample evidence to sustain all remaining elements of Appellant's convictions.

As to DUI, the trial court credited Officer Fry's testimony that Appellant emitted a strong odor of alcohol, slurred his speech, had difficulty maintaining his balance, and became agitated when he was asked to submit to field sobriety tests because he claimed "he was not driving." *See* N.T. Trial, 6/11/18, at 30, 37. These observations by Officer Fry were sufficient to establish that Appellant was under the influence of alcohol to a degree that rendered him incapable of safe driving. *See Segida*, 985 A.2d at 879. Ruch also testified that he observed Appellant driving the motorcycle only moments before his encounter with Officer Fry. Therefore, it was reasonable for the court to conclude that Appellant drove his motorcycle at a time when he was incapable of driving safely due to ingestion of alcohol. *See id.* Accordingly, there was ample evidence to support Appellant's DUI conviction. *See Tucker*, 143 A.3d at 964.

As to reckless driving, Ruch testified that Appellant swerved between lanes several times, came close to being struck by a tractor-trailer, and abruptly turned left in front of a panel van before driving down a grass embankment. *See* N.T. at 10, 12, 13. Based on this testimony, which the trial court found credible, there was "other tangible indicia of unsafe driving" to demonstrate Appellant's disregard of the substantial risk of harm to others on the roadway. *See Jeter*, 937 A.2d at 468; *compare Commonwealth v.*

*Greenberg*, 885 A.2d 1025, 1026 (Pa. Super. 2005) (reversing reckless driving conviction where there was no evidence that defendant had difficulty negotiating the roadway or that he came close to striking other vehicles before losing control of his vehicle on a sharp turn).  Accordingly, we agree with the trial court's conclusion that there was sufficient evidence to support Appellant's conviction for reckless driving.  *See Tucker*, 143 A.3d at 964.

As to improper use of a learner's permit, Officer Fry testified that Appellant had a learner's motorcycle permit on the night of his arrest.  *See* N.T. at 36.  Ruch testified that Appellant operated the motorcycle at approximately 2:00 a.m. on that same night.  *Id.* at 5.  Because a learner's permit only authorizes the licensee to operate a motorcycle before sunset and after sunrise, it was a violation for Appellant to operate the motorcycle at 2:00 A.M.  *See* 75 Pa.C.S. § 1505(c).  Accordingly, there was sufficient evidence to support Appellant's conviction for improper use of a learner's permit.  *See Tucker*, 143 A.3d at 964.

In sum, we conclude that the potential claims identified in the *Anders/Santiago* brief are frivolous.  Moreover, our independent review of the record does not reveal any additional, non-frivolous issues in this appeal.  *See Yorgey*, 188 A.3d at 1196-97; *Flowers*, 113 A.3d at 1249.  Accordingly, we grant counsel's petition to withdraw and affirm the judgment of sentence.

Judgment of sentence affirmed.  Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/13/19