J-S41029-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MISTY LYNN DUNBAR | : | |
| | : | |
| Appellant | : | No. 356 MDA 2022 |

Appeal from the Judgment of Sentence Entered January 21, 2022
In the Court of Common Pleas of Northumberland County
Criminal Division at CP-49-CR-0001348-2019

BEFORE:   LAZARUS, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:               **FILED: DECEMBER 29, 2022**

Misty Lynn Dunbar (Appellant) appeals from the judgment of sentence imposed after a jury convicted her of numerous crimes including attempted first-degree murder, criminal conspiracy, arson, aggravated arson, causing catastrophe, and recklessly endangering another person.[1]  We affirm.

The trial court summarized the facts leading to Appellant's convictions as follows:

> In the early morning hours of August 13, 2019, Kelly Witmer was asleep in her bed at 434 North Walnut Street, Mount Carmel, Pennsylvania, when she was suddenly awakened by the smell of smoke.  She left the bedroom, went to the first floor, and saw the outside of the house on fire.  Fortunately, she was able to escape unharmed with her dog.  The fire became so out of control and severe that the residence was ultimately destroyed, as well as the

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 901(a); 903(a); 3301(a),(c),(d); 3302(a); and 2705.

neighboring residence. One of the firefighters who was attempting to distinguish the blaze did suffer injury. [Ms. Witmer] was the only one home at the time. She lived there with her boyfriend, Jason Dillow, as the property was owned by her boyfriend's father. It turns out that [Appellant] previously was Jason's girlfriend. [Appellant] was captured on video surveillance of a neighbor quickly leaving the scene right after a flash appears. There was evidence that the fire was set by [Appellant], and also by her own admission. By her own statements, [Appellant] set the front door and side [of the house] on fire as a retaliatory measure against her former boyfriend's new girlfriend "out of spite."

Trial Court Opinion, 4/7/22, at 1.

The Commonwealth charged Appellant with 13 crimes, and Appellant appeared for a one-day trial on September 14, 2021. The jury convicted Appellant of all charges. On January 21, 2022, the trial court sentenced Appellant to an aggregate 11 – 22 years of incarceration. Appellant timely appealed on February 17, 2021. The trial court and Appellant have complied with Pa.R.A.P. 1925(b).

Appellant presents one issue for review:

I. WAS THE EVIDENCE INTRODUCED AT TRIAL INSUFFICIENT TO PROVE [APPELLANT] GUILTY BEYOND A REASONABLE DOUBT OF ATTEMPTED MURDER BECAUSE IT FAILED TO ESTABLISH [APPELLANT] HAD ANY SPECIFIC INTENT TO KILL ANOTHER[?]

Appellant's Brief at 6.

A claim challenging the sufficiency of the evidence is a question of law. *Commonwealth v. Nevels*, 203 A.3d 229, 241 (Pa. Super. 2019), *aff'd*, 235 A.3d 1101 (Pa. 2020).

Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt

... When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. "In conducting our review, we consider all of the evidence actually admitted at trial and do not review a diminished record."

*Id.* (citation omitted).

Appellant argues the Commonwealth presented insufficient evidence to support her conviction of attempted murder.[2] Appellant's Brief at 8-11. Appellant claims the Commonwealth "failed to establish she had the specific intent to kill." *Id.* at 8. She asserts the record "only contains attenuated inferences that [Appellant] possessed the specific intent to kill anyone. In [her] police interview she denied any intent to kill anyone." *Id.*

Appellant further states:

Both police officers testified on cross examination that during their interview of [Appellant], she denied trying to hurt anyone, or knowing that anyone was present in the home that was set on fire. (Trial Transcript p. 44 and 51). [Appellant] denied on direct examination and cross that she intended to harm anyone. (*Id.* at 117-136). The Commonwealth depends entirely upon circumstantial evidence and the inferences drawn from that evidence to support the element of specific intent for criminal attempt criminal homicide.

*Id.* at 10.

Neither the law nor the record support Appellant's argument. A person "commits an attempt when with intent to commit a specific crime, [s]he does

---

[2] The Commonwealth has not filed an appellee brief.

any act which constitutes a substantial step towards the commission of that crime." 18 Pa.C.S.A. § 901(a).

The Crimes Code provides:

**(a) Murder of the first degree.--**A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

18 Pa.C.S.A. § 2502(a). With respect to homicide, a person is guilty of criminal homicide if she "intentionally, knowingly, recklessly or negligently causes the death of another human being." 18 Pa.C.S.A. § 2501(a).

"For a defendant to be found guilty of attempted murder, the Commonwealth must establish specific intent to kill." **Commonwealth v. Tucker**, 143 A.3d 955, 964 (Pa. Super. 2016) (citation omitted). Pertinently, the Commonwealth "may establish the *mens rea* required for first-degree murder, specific intent to kill, solely from circumstantial evidence." **Id.** (citation omitted). The trial court correctly observed that "this Court is to accept as true all direct and circumstantial evidence and all reasonable inferences from which the jury could have based their verdict." Trial Court Opinion, 4/7/22, at 2 (citing **Commonwealth v. Sexton**, 222 A.3d 405, 416 (Pa. Super. 2019)).

The Commonwealth presented trial testimony from eight witnesses: the victim, Ms. Witmer; the victim's boyfriend, Jason Dillow; Jason Dillow's father, John Dillow; the neighbor whose home was also destroyed by the fire, Edward Koblinski; another neighbor and "acquaintance" of Appellant, Angela Koreisl;

and three investigating police officers (Mt. Carmel Officer Justin Stelma, Mt. Carmel Chief Christopher Buhay, and Pennsylvania State Trooper James Nizinski). Appellant was the only witness who testified for the defense.

The trial court emphasized the following testimony:

[The victim testified that she and Appellant] were acquainted with each other for a period of three (3) years prior to the fire. [Appellant] was living with Jason Dillow, and it was [the victim] who told [Appellant] that [Appellant] had to leave the residence she shared with Mr. Dillow as his girlfriend because [the victim] was now going to be moving in with Mr. Dillow. [The victim] then proceeded to put [Appellant's] stuff out on the back porch. The feud escalated with something being thrown [sic] the front window. A week or two later, [the victim] moved into the residence with Jason.

Another Commonwealth witness, Angela Koreisl, allowed [Appellant] to move [in with her,] next door to Mr. Dillow and Ms. Witmer[,] after [Appellant] was asked to leave Mr. Dillow's place. [Ms. Koreisl] related that it was [Appellant] who threw her daughter's tricycle through [the victim's] front window. [Appellant] was not happy with the break-up and had no place to go once [the victim] and Mr. Dillow got together as a couple. Ms. Koreisl further testified that on August 12, 2019, the evening before the fire, [she and Appellant] went to the Sons of Poland Bar where they met up with another friend, Michelle Rhoads. At closing time, after drinking awhile, the three of them then went back to Ms. Koreisl's house. They stayed up and Ms. Rhoads and [Appellant] started talking about beating up [the victim]. [Appellant and Ms. Rhoads] left Miss Koreisl's place around 5 a.m., and when they returned later, [Appellant] told [Ms. Koreisl] that [Appellant] did a life changing thing, that is, she lit Dillow's house on fire. [Appellant] told Ms. Koreisl that "karma's a bitch," and also "if we can get away with this, we can get away with murder."

Ms. Koreisl did not know if they were intoxicated, but she knew [Appellant] had used Percocet. [Appellant] had further related to Ms. Koreisl that she had found lighter fluid, dowsed the porch of the Dillow residence, and then she lit the fire and they watched the smoke until it ignited, and they were laughing about it.

- 5 -

The day after the fire, on August 14, 2019, [Appellant] told a broadcaster with the WNEP local television station that she lit the fire. A transcript of the interview was introduced into evidence whereby [Appellant] stated "maybe somebody won't kick somebody out on her ass with no reason."[3] In an interview with the police that same day, [Appellant] also admitted that she used kerosene to light the fire, with leaves and paper, and that her friend Ms. Rhoads was her look out.

Trial Court Opinion, 4/7/22, at 3-4 (footnote added).

Consistent with above testimony, the trial court concluded that the "jury's finding [Appellant guilty of attempted homicide] was supported by the evidence." *Id.* at 2. We agree. Our review of the record confirms that the Commonwealth presented sufficient evidence for the jury to conclude that Appellant possessed the specific intent to kill the victim. Thus, the evidence was sufficient to support Appellant's conviction of attempted first-degree murder.

Judgment of sentence affirmed.

---

[3] The Commonwealth admitted the transcription as "the best evidence," and requested Officer Stelma read it "rather than recite it from memory." N.T., 9/14/21, at 38; Commonwealth Exhibit 4. Appellant did not object. N.T., 9/14/21, at 38-39. The transcript indicates the WNEP news reporter was covering Appellant's arraignment when Appellant stated, "Maybe next time you won't kick somebody out on their ass for no reason." Commonwealth Exhibit 4.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/29/2022