J-S47029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                    :            PENNSYLVANIA
                                    :

              v.                         :

GUISEPPE BRUNO, JR.              :

            Appellant        :     No. 310 MDA 2019

Appeal from the Judgment of Sentence Entered October 3, 2018
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0005038-2016

BEFORE:  DUBOW, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:         **FILED OCTOBER 11, 2019**

Appellant Guiseppe Bruno, Jr. appeals from the judgment sentence imposed following his jury trial conviction for persons not to possess firearms.[1] Appellant challenges the sufficiency and weight of the evidence, the trial court's evidentiary ruling, and the discretionary aspects of his sentence.  We affirm.

The trial court set forth the relevant facts of this appeal as follows:

> On September 27, 2014, at approximately 3:00 A.M., Officers Sholedice and Dickson were on patrol around N. 5th Street and Elm Street, City of Reading. . . .  They heard two shots close in time and immediately went to investigate.  The Officers noticed a male of average build dressed in dark clothing running down Elm Street.  He was coming from the area where the Officers heard the shots.  They attempted to verbally engage the man but he fled and the Officers pursued.  As the Officers attempted to make entry

---

[1] 18 Pa.C.S. § 6105(a)(1).

into the alley, another group of shots rang out from the other end of the alley. The Officers took cover and requested back-up.

Additional police arrived and it was discovered that the alley led to an apartment building on N. 5th Street. After checking the other floors unsuccessfully, the police found people on the third floor and a search waiver was signed by the apartment tenant. During the search, a Ruger P85 9 mm was found. The tenant also found a second gun, a Raven Arms Model #MP-25 .25 caliber, in a trash can after the police had left. He called the police who subsequently recovered the second gun. Only the 9 mm Ruger was processed for DNA. The results concluded that [Appellant's] DNA was present on the Ruger.

The other occupants of the apartment were interviewed about the shots fired. In the course of the investigation, it was discovered that [Appellant] left the apartment and was outside for just a few minutes when the others heard shots. [Appellant] came running back into the apartment after the shots were heard, sweating and out of breath. He went to the window, fired multiple shots out of the window, then took off his shirt and lay down on the floor a few minutes before the police arrived.

Trial Ct. Op., 5/7/19, at 2-3.

On November 29, 2016, the Commonwealth filed a criminal information charging Appellant with two counts of persons not to possess firearms. One count related to the 9 mm firearm found by police, and the second count related to the .25 caliber firearm discovered by the apartment tenant.

Appellant proceeded to a jury trial on September 25, 2018. At that time, the parties stipulated that Appellant had prior convictions for robbery and conspiracy, which rendered him ineligible to possess a firearm. **See** Commonwealth's Trial Ex. 9.

In addition to various police witnesses, the Commonwealth called Nadine Kaufman, who was Appellant's girlfriend at the time of the incident.

*See* N.T. Trial, 9/25/18-9/26/18, at 133. Ms. Kaufman testified that she and Appellant were present at the apartment on the night of the shooting. *Id.* at 134-35. Ms. Kaufman confirmed that Appellant "stepped out of the apartment" to cool down for approximately two to five minutes. *Id.* at 136-37. Appellant returned to the apartment, and the police arrived shortly thereafter. *Id.* at 137.

Ms. Kaufman also testified that her father owned several firearms, and her father had shown the firearms to Appellant. *Id.* at 133-34. Although Ms. Kaufman indicated that Appellant had been to her parents' house on prior occasions, Ms. Kaufman denied that Appellant ever told her that he had taken her father's firearms.[2] *Id.* at 138-39.

At that point, the parties went to a sidebar. *Id.* at 140. The Commonwealth asked that the jury be excused, and it requested an opportunity to play a video recording of Ms. Kaufman's 2014 interview with police to refresh her recollection of certain statements Appellant made to her about possessing firearms.[3] *Id.* at 140-42. The trial court excused the jury and permitted the Commonwealth to show the video to Ms. Kaufman. *Id.* at 141.

_____

[2] Subsequent testimony from Criminal Investigator Wendell Buck of the Reading Police Department confirmed that Ms. Kaufman's father was the registered owner of both firearms recovered from the crime scene. *See* N.T. Trial at 161.

[3] Police conducted Ms. Kaufman's interview at 7:00 a.m. on September 27, 2014, approximately four hours after the initial gunshots. *See* N.T. Trial at 162.

Before the Commonwealth started the video, Ms. Kaufman testified that she was intoxicated at the time of her interview, so she did not believe that watching the video would refresh her recollection. *Id.* at 142. Appellant's counsel then objected to the playing of the video, claiming it would not refresh the witness' recollection. *Id.* The trial court overruled the objection and allowed the Commonwealth to play the video. *Id.*

In the video, Ms. Kaufman informed investigators that Appellant had shown her the firearms, telling her that he was "going to keep them for safety." *Id.* at 143. At the conclusion of the video, however, Ms. Kaufman insisted that it had not refreshed her recollection. *Id.* The jury returned to the courtroom, the Commonwealth concluded its direct examination, and Appellant's counsel cross-examined Ms. Kaufman. *Id.* at 143-50. On cross-examination, Ms. Kaufman reiterated that she had consumed a large amount of alcohol on the night in question, "taking shots of vodka and that's all I can remember." *Id.* at 149.

On the second day of trial, the Commonwealth presented testimony from Investigator Buck, who conducted the 2014 interview with Ms. Kaufman. *Id.* at 162. Prior to Investigator Buck's testimony, the Commonwealth informed the trial court that it intended to play portions of Ms. Kaufman's videotaped interview for the jury during Investigator Buck's direct examination. *Id.* at 154-55. Appellant's counsel objected, arguing that Ms. Kaufman's recorded statements were hearsay, and no exception to the hearsay rule permitted their admission as substantive evidence. *Id.* at 156.

- 4 -

The Commonwealth responded that the evidence was being offered as a prior inconsistent statement, and "any argument as to the inconsistency goes to weight rather than admissibility." *Id.* at 157. The court overruled Appellant's objection and permitted the Commonwealth to play the video. *Id.* at 158, 165.

After the Commonwealth played the video, Investigator Buck confirmed that it was a fair and accurate representation of his interview with Ms. Kaufman.[4] *Id.* at 165. Further, Investigator Buck testified that Ms. Kaufman did not appear to be intoxicated at the time of the interview. *Id.* at 163-64.

Ultimately, the jury found Appellant guilty of the count related to possession of the 9 mm firearm. The jury found Appellant not guilty of the count related to possession of the .25 caliber firearm.

The trial court conducted Appellant's sentencing hearing on October 3, 2018. At that time, the Commonwealth stated that Appellant's prior record score (PRS) was four. Appellant disputed the calculation of his PRS, arguing that it was three because his prior robbery conviction was an element of persons not to possess firearms. The trial court considered the parties' arguments and announced Appellant's sentence as follows:

> Okay. The sentence in this matter, the [c]ourt has taken into consideration all of the information provided at this hearing, including the disagreement with regard to whether the [PRS] is three or a four, the [c]ourt does not find that it is necessary to distinguish that because there [is] commonality between . . . the

---

[4] Ms. Kaufman's interview was on a CD that was marked as Commonwealth's Exhibit 36. This CD was not included with the certified record on appeal.

two sentencing guidelines and they are only guidelines in any case.

N.T. Sentencing Hr'g, 10/3/18, at 8. At the conclusion of the hearing, the trial court sentenced Appellant to four to ten years' imprisonment.[5]

Appellant timely filed post-sentence motions on October 12, 2018. In his motions, Appellant challenged the sufficiency and the weight of the evidence. Appellant also claimed that the trial court erroneously admitted Ms. Kaufman's videotaped interview, where "Ms. Kaufman did not answer questions about the substance of the statement during her testimony, [and] Ms. Kaufman was not available for cross-examination about the prior video statement." Post-Sentence Mot., 10/12/18, at ¶ 21.

Further, Appellant argued that the trial court should have determined his PRS at the sentencing hearing. Therefore, Appellant requested that "the court reconsider his argument with regard to the [PRS], make a definitive determination as to the [PRS] to be applied . . . and determine the applicable sentencing guidelines." *Id.* at ¶ 38. The trial court denied Appellant's post-sentence motion on January 29, 2019.

Appellant timely filed a notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court filed a responsive opinion concluding (1) sufficient evidence supported the conviction where Appellant had access to

---

[5] The offense gravity score (OGS) for persons not to possess firearms (loaded/ammo available) is ten. *See* 204 Pa. Code § 303.15. With an OGS of ten and a PRS of three, the standard range of the guidelines is forty-two to fifty-four months. *See* 204 Pa. Code § 303.16(a). With an OGS of ten and a PRS of four, the standard range of the guidelines is forty-eight to sixty months. *Id.*

the firearm and investigators found his DNA on the firearm; (2) the verdict was not against the weight of the evidence; (3) Ms. Kaufman's statements in the videotaped interview qualified as exceptions to the hearsay rule, pursuant to Pa.R.E. 803.1; and (4) the trial court followed all appropriate procedures at the sentencing hearing.

Appellant now raises four issues for our review:

1. Whether the Commonwealth failed to present sufficient evidence to support a verdict of guilty of persons not to possess firearms where the Commonwealth failed to prove the required elements of the offense beyond a reasonable doubt; specifically, the Commonwealth failed to prove that Appellant had actual or constructive possession of the 9 mm Ruger pistol, including the power and intent to control the firearm.

2. Whether the trial court erred by not granting a new trial where the guilty verdict for persons not to possess a firearm was against the weight of the evidence, where the testimony of the DNA analyst clearly indicated it was possible that Appellant's DNA could be on the 9 mm Ruger pistol without him actually touching the firearm and testified that she could not tell if the DNA on the firearm came directly from Appellant or if it was transferred there by another person or item; and where the video statement of Nadine Kaufman admitted at trial was unreliable and where there was a lack of evidence presented by the Commonwealth to prove, beyond a reasonable doubt, Appellant's intent and power to control the firearm.

3. Whether the trial court erred by admitt[ing] the video statement of Nadine Kaufman as evidence, as the video did not refresh [her] recollection during her testimony, and, as she did not answer questions about the substance of the statement and Appellant did not have a prior opportunity to cross-examine her in regard to the statement, she was unavailable for cross-examination, the video statement was inadmissible hearsay and its admission into evidence was improper and a violation of the Confrontation Clause.

[4]. Whether the trial court erred and abused its discretion in sentencing Appellant to not less than forty-eight (48) months nor more than one-hundred and twenty (120) months' incarceration where the trial court did not determine whether Appellant's [PRS] was a three or a four and the trial court simply sentenced Appellant within both ranges.

Appellant's Brief at 6-8 (some capitalization omitted).

In his first issue, Appellant contends that the Commonwealth failed to establish that he controlled or possessed the firearm. *Id.* at 16. Appellant maintains that the police officers provided a "generic description of the individual who fired shots near the 400 block of Elm Street." *Id.* at 17. Appellant emphasizes that "[t]he police lost sight of the shooter as he entered a breezeway connected to a courtyard and the apartment building," and "[t]here was no testimony where an officer saw the unknown shooter enter the apartment building." *Id.* at 17-18. Regarding the DNA evidence, Appellant insists that the Commonwealth's expert "could not say that [Appellant] at any time possessed the firearm," and the DNA "profiles of at least [two] people were recovered from the firearm." *Id.* at 18. Appellant concludes that the Commonwealth's evidence was insufficient to establish the element of possession beyond a reasonable doubt. *Id.* at 19.

Our standard of review for sufficiency claims is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of

- 8 -

innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Tucker*, 143 A.3d 955, 964 (Pa. Super. 2016) (citation and brackets omitted).

Section 6105 of the Crimes Code provides that persons convicted of certain enumerated offenses "shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." 18 Pa.C.S. § 6105(a)(1). Further, "[p]ossession can be found by proving actual possession, constructive possession, or joint constructive possession." *Commonwealth v. Parrish*, 191 A.3d 31, 36 (Pa. Super. 2018) (citation omitted), *appeal denied*, 202 A.3d 42 (Pa. 2019).

Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial

evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

*Id.* at 36-37 (citations, brackets, and quotation marks omitted).

Instantly, the trial court evaluated the Commonwealth's evidence as follows:

The Officers followed the person believed to have fired the shots to the location where [Appellant] was found. Although the police did not get a clear view of the shooter, the shooter was described as male and of average build. None of the other people in the apartment building fit this description. [Appellant] was found sweaty and lying on the floor. The gun was found in the same location that [Appellant] was found. The gun was registered to [Appellant's] girlfriend's father. Most significantly, [Appellant's] DNA matched DNA that was collected from the gun.

[Appellant] argues that the Commonwealth failed to prove that he had actual or constructive possession of the gun. . . . In this case, [Appellant] had access to the gun as he was found in the same apartment as the gun. Although there was no testimony at trial that he was seen holding the gun, the fact that his DNA was found on the gun would allow a jury to reasonably conclude that he had possessed the gun.

Trial Ct. Op. at 4 (record citations omitted).

Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, the Commonwealth presented sufficient evidence to establish Appellant's constructive possession of the firearm. *See* 18 Pa.C.S. § 6105(a)(1); *Parrish*, 191 A.3d at 36; *Tucker*, 143 A.3d at 964. Therefore, Appellant is not entitled to relief on his first claim.

In his second issue, Appellant asserts "[t]he Commonwealth built its case on weak, contradictory and vacuous circumstantial evidence."

- 10 -

Appellant's Brief at 19. Appellant acknowledges that the Commonwealth provided expert testimony about the DNA recovered from the firearm, but he insists that "[t]he expert testimony on the issue . . . adversely impacted the weight of the evidence." *Id.* at 20. Appellant reiterates that investigators recovered multiple DNA profiles from the firearm, "the second DNA profile remains unknown and was not identified" at trial, and "the expert could not testify as to how the DNA got onto the weapon." *Id.* Appellant also argues that the police did not know the identity of the shooter, and Appellant "was not identified until he was discovered in [the] apartment on the floor." *Id.* Appellant concludes that the verdict was against the weight of the evidence. *Id.*

Our standard of review regarding challenges to the weight of the evidence is as follows:

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the [fact-finder] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [fact-finder's] verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Landis*, 89 A.3d 694, 699 (Pa. Super. 2014) (citation omitted).

We have explained that

a new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial court is to determine that notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice. A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict; thus the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.

*Id.* (citation and brackets omitted).

Instantly, the trial court considered the testimony from the Commonwealth's DNA expert and determined that it supported the jury's verdict:

The DNA Analyst . . . testified that there was a mixture of at least two people's DNA found on the gun. However, the DNA that was identified as [Appellant's] contributed the most DNA to the profile. The DNA Analyst did state that there was no **definitive** way to determine how [Appellant's] DNA got onto the gun. However, when asked about secondary and tertiary DNA transfer, the DNA Analyst stated that "the further along [down] that line you go, the less likely [a DNA transfer] is to occur but it can occur." The DNA Analyst stated that there was "quite a bit of DNA present" on the sample she received and that she was able to get "a very good profile off of that." Based on the significant amount of DNA found on the gun, there is ample evidence to believe that [Appellant] had control of the gun.

Trial Ct. Op. at 5-6 (record citations omitted) (emphasis in original).

Regarding the additional evidence of record, the trial court noted that the jury could have found some of Ms. Kaufman's testimony to be credible. *Id.* at 6. Significantly, Ms. Kaufman admitted that Appellant had been to her

parents' house, and he had seen her father's firearms. *Id.* Further, Ms. Kaufman testified that Appellant left the apartment for a brief period around the same time that the officers encountered the shooter. *Id.*

Following our review, we discern no abuse of discretion in the trial court's decision to deny Appellant's weight claim. *See Landis*, 89 A.3d at 699. The trial court appropriately concluded that the verdict was not so contrary to the evidence as to require a new trial. *See id.* Further, we decline to reassess the credibility of the Commonwealth's witnesses and to reweigh the testimony and evidence presented at trial. *See Commonwealth v. West*, 937 A.2d 516, 523 (Pa. Super. 2007) (emphasizing that the trier of fact is "free to believe all, part or none of the evidence," and "[t]his Court may not [re]weigh the evidence or substitute its judgment [f]or that of the fact finder" (citation omitted)). Accordingly, Appellant's challenge to the weight of the evidence merits no relief.

In his third issue, Appellant argues that the admission of Ms. Kaufman's videotaped police interview as substantive evidence violated the Sixth Amendment's Confrontation Clause:

> In this specific case, the [trial c]ourt erred in admitting the [Kaufman] video statement because it was not reliable. The courts have determined that the best way to test reliability is through the use of cross-examination. The Commonwealth attempted to refresh the recollection of the witness . . . through having her view her prior videotaped statement. The witness's recollection was not refreshed and therefore [she was] unavailable for cross-examination.

Appellant's Brief at 21-22 (record citations omitted). Appellant concludes the trial court committed reversible error by admitting the videotaped interview into evidence. *Id.* at 22.

This Court's standard of review for issues regarding the admissibility of evidence is well settled:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court . . . and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court over-rides [sic] or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Belknap*, 105 A.3d 7, 9-10 (Pa. Super. 2014) (alterations in original and citations, some brackets, and quotation marks omitted).

Hearsay is an out-of-court statement made by a declarant, which a party seeks to offer into evidence to prove the truth of the matter asserted in the statement. Pa.R.E. 801(c). Generally, hearsay is not admissible except as provided by the Pennsylvania Rules of Evidence, by other rules prescribed by the Pennsylvania Supreme Court, or by statute. Pa.R.E. 802. "The rationale for the hearsay rule is that hearsay is too untrustworthy to be considered by the trier of fact." *Commonwealth v. Charlton*, 902 A.2d 554, 559 (Pa. Super. 2006) (citation omitted).

"Exceptions have been fashioned to accommodate certain classes of hearsay that are substantially more trustworthy than hearsay in general, and thus merit exception to the hearsay rule." *Id.* (citation omitted). Pennsylvania Rule of Evidence 803.1(1) provides one such exception:

> The following statements are not excluded by the rule against hearsay if the declarant testifies and is subject to cross-examination about the prior statement:
>
> \* \* \*
>
> **(1) Prior Inconsistent Statement of Declarant-Witness.** A prior statement by a declarant-witness that is inconsistent with the declarant-witness's testimony and:
>
> \* \* \*
>
> (C) is a verbatim contemporaneous electronic recording of an oral statement.

Pa.R.E. 803.1(1)(C); *see also Commonwealth v. Enix*, 192 A.3d 78, 81 (Pa. Super. 2018) (noting that "[a] prior inconsistent statement may be offered not only to impeach a witness, but also as substantive evidence if it meets additional requirements of reliability" (citation omitted)). "It is well-settled that admitting a declarant's prior inconsistent statement does not violate the Confrontation Clause of the Sixth Amendment when the declarant, [her]self, testifies as a witness at trial and is subject to cross-examination." *Commonwealth v. Hanible*, 30 A.3d 426, 444 (Pa. 2011) (citations omitted).

Instantly, Ms. Kaufman's videotaped interview was inconsistent with her trial testimony that, prior to Appellant's arrest, she was unaware that he might

have possessed her father's firearms. *See* N.T. Trial at 138, 143. At trial, Investigator Buck confirmed that the videotape was "a fair and accurate representation" of the interview, which occurred approximately four hours after police encountered the shooter. *Id.* at 162, 165.

Although Appellant now claims that the Commonwealth's inability to refresh Ms. Kaufman's recollection rendered her unavailable for cross-examination, we emphasize that Ms. Kaufman testified as a witness at trial and was subject to cross-examination. *See Hanible*, 30 A.3d at 444. Moreover, Appellant took advantage of the opportunity to cross-examine Ms. Kaufman, eliciting testimony about the amount of alcohol she consumed on the night in question. *See* N.T. Trial at 148-49. Therefore, we conclude that the trial court did not abuse its discretion by permitting the Commonwealth to play the videotape for the jury, because Ms. Kaufman's interview statements were not excluded by the hearsay rule. *See* Pa.R.E. 803.1(1)(C); *Belknap*, 105 A.3d at 9-10.

In his fourth issue, Appellant asserts that "[a] trial court has broad discretion . . . when sentencing; however, the trial court must use the sentencing guidelines as guideposts in its decision." Appellant's Brief at 22-23 (citation omitted). Further, Appellant cites 204 Pa. Code § 303.2(a)(2) for the proposition that a trial court "must establish the defendant's [PRS]" in order to determine a guideline sentence. *Id.* at 23. Appellant concludes the trial court erred by failing to determine his PRS, and the imposition of a

sentence without a definitive PRS constituted an abuse of discretion. *Id.* at 23-24.

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." ***Commonwealth v. Derry***, 150 A.3d 987, 991 (Pa. Super. 2016) (citation omitted). Rather, before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether [the a]ppellant preserved his issues; (3) whether [the a]ppellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the [S]entencing [C]ode.

***Commonwealth v. Corley***, 31 A.3d 293, 296 (Pa. Super. 2011) (citation omitted).

Here, Appellant timely filed a notice of appeal, preserved his claim in the post-sentence motions, and included a concise statement of reasons relied upon for allowance of appeal in his brief. ***See id.*** Additionally, the claim that the trial court misapplied the sentencing guidelines by failing to determine a defendant's PRS raises a substantial question. ***See Commonwealth v. Johnson***, 758 A.2d 1214, 1216 (Pa. Super. 2000) (explaining that the appellant presented a substantial question in claiming that the sentencing court misapplied the sentencing guidelines by miscalculating the PRS). Therefore, we will review Appellant's claim.

Our well-settled standard of review is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal

absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgments for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation omitted).

"The court shall consider the sentencing guidelines in determining the appropriate sentence for offenders convicted of . . . felonies and misdemeanors." 204 Pa. Code § 303.1(a). Further, the Pennsylvania Administrative Code provides the following procedure for determining a guideline sentence:

(a) For each conviction offense of a judicial proceeding, the procedure for determining the guideline sentence shall be as follows:

(1) Determine the Offense Gravity Score as described in § 303.3 and § 303.15.

(2) Determine the Prior Record Score as described in § 303.4-§ 303.8.

(3) Determine the guideline sentence recommendation as described in § 303.9-§ 303.14 . . . .

204 Pa. Code § 303.2(a).

When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation. Where the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. Further,

- 18 -

where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code.

*Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010) (citations and quotation marks omitted).

Instantly, the record includes a guideline sentence form from the Pennsylvania Commission on Sentencing. Although the trial court did not explicitly state that Appellant's PRS was four, the form listed Appellant's OGS as ten, his PRS as four, and a standard range of forty-eight to sixty months. *See* Guideline Sentence Form, filed 10/15/18, at 1. Accordingly, the sentence imposed reflects the trial court's determination that this information was correct. Further, the trial court denied Appellant's post-sentence motion, which challenged the trial court's finding that the PRS was four.

We also note that Appellant's underlying argument that his PRS should not have included his prior conviction for robbery lacks merit. We conclude that the trial court's use of the prior conviction in calculating Appellant's PRS did not constitute "double counting" in violation of the Sentencing Guidelines, because Appellant's prior conviction was not an element of the offense of persons not to possess firearms. *See Commonwealth v. Keiper*, 887 A.2d 317, 321 (Pa. Super. 2005) (rejecting an appellant's argument that a prior burglary conviction was an element of persons not to possess firearms).

Moreover, Pennsylvania law views a standard range sentence as appropriate under the Sentencing Code. *See Moury*, 992 A.2d at 171. The trial court also had the benefit of a PSI report. *See* N.T. Sentencing Hr'g at

4. Therefore, we can assume the trial court was aware of the relevant information regarding Appellant's character and other pertinent sentencing factors. *See Moury*, 992 A.2d at 171. Under these circumstances, Appellant has failed to establish that the trial court ignored or misapplied the law, and we cannot say that the trial court abused its discretion. *See Raven*, 97 A.3d at 1253.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/11/2019