J-A20024-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                    :          PENNSYLVANIA
                                      :
          v.                         :
                                        :
                                      :
ROBERTO HERNANDEZ PEREZ     :
                                        :
          Appellant            :     No. 1361 WDA 2019

Appeal from the Judgment of Sentence Entered March 22, 2018
In the Court of Common Pleas of McKean County Criminal Division at
No(s): CP-42-CR-0000342-2017

BEFORE: BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:            FILED NOVEMBER 16, 2020

Appellant, Roberto Hernandez Perez, appeals from the March 22, 2018 judgment of sentence imposing an aggregate sentence of 8 to 16 years' incarceration after a jury convicted him of possession of a controlled substance with the intent to deliver (4 counts), drug delivery resulting in death, involuntary manslaughter, recklessly endangering another person (3 counts), and criminal conspiracy to possess a controlled substance with the intent to deliver (4 counts).[1] We affirm.

The record demonstrates that on October 13, 2016, Appellant provided the victim's girlfriend with two fentanyl transdermal patches. The victim, his

_____

[1] 35 P.S. § 780-113(a)(30) and 18 Pa.C.S.A. §§ 2506, 2504(a), 2705, and 903(a)(1), respectively. We note that the jury's verdict slip incorrectly cited the crime of possession of a controlled substance with the intent to deliver as a violation of 35 Pa.C.S.A. § 780-113(a)(30). See Verdict Slip, 2/7/18.

girlfriend, and another friend, each, ingested a portion of the patches shortly before the victim was found deceased. Appellant was subsequently charged with the aforementioned crimes in connection with the alleged drug-overdose death of the victim. On October 16, 2017, Appellant filed an omnibus pre-trial motion, which included, inter alia, a request for funds to retain a medical expert for purposes of evaluating the victim's cause of death. See Omnibus Pre-Trial Motion, 10/16/17, at ¶¶ 30-32. The trial court held a hearing on Appellant's omnibus pre-trial motion and subsequently denied the motion on January 8, 2018.[2] On January 16, 2018, Appellant filed a motion for a continuance of his trial,[3] a motion to appoint funds to retain a medical expert, and a motion to appoint funds to hire a private investigator. The trial court subsequently denied Appellant's request for a continuance of trial, denied further funding to retain a medical expert,[4] and granted funding to hire a

_____

[2] At the hearing, the trial court stated that while it believed Appellant was entitled to funds for purposes of retaining a medical expert to evaluate the victim's cause of death, it would not approve Appellant's request for funds without more information regarding the cost to retain the services of the medical expert. N.T., 1/8/18, at 5-7. The trial court instructed Appellant to file a subsequent request, via written correspondence, with the trial court that included an estimate of the cost to retain the services of the medical expert. Id. at 7.

[3] Appellant's trial was scheduled for February 5, 2018, through February 7, 2018.

[4] The trial court stated that Appellant was already provided $1,500.00 to retain a medical expert. Trial Court Order, 1/18/18; see also Trial Court Order 1/18/18 (approving funds to hire a medical expert).

- 2 -

private investigator.  Appellant filed a motion to reconsider the order denying Appellant's request for additional funds to retain a medical expert and his request for a continuance of trial.  The trial court denied Appellant's motion for reconsideration on January 30, 2018.

On February 7, 2018, a jury found Appellant guilty of the aforementioned crimes.  After the jury returned its verdict but before the trial court imposed its sentence, Appellant sought extraordinary relief in a motion in arrest of judgment requesting a new trial or, in the alternative, the dismissal of certain charges.  The trial court subsequently denied Appellant's motion. On March 22, 2018, the trial court sentenced Appellant to 7 to 14 years' incarceration for his conviction of drug delivery resulting in death (Count 1), consecutive to a sentence of 6 to 12 months' incarceration for his conviction of one count of possession of a controlled sentence with the intent to deliver (Count 3),[5] and consecutive to a sentence of 6 to 12 months' incarceration for his conviction of one count of recklessly endangering another person

---

[5] Appellant was sentenced to 6 to 12 months' incarceration, each, for his two additional convictions of possession of a controlled sentence with the intent to deliver (Counts 4 and 5).  These two sentences were to run concurrent to the consecutive sentence imposed for Count 3.  For purposes of sentencing, Appellant's conviction for one count of possession of a controlled sentence with the intent to deliver (Count 2), involuntary manslaughter (Count 6), and recklessly endangering another person (the victim) (Count 7) merged with the conviction of drug delivery resulting in death (Count 1).

(Count 8).[6]  Appellant's aggregate sentence was 8 to 16 years' incarceration.

On April 2, 2018, Appellant filed a post-sentence motion, which the trial court

denied on April 6, 2018.  This appeal followed.[7]

Appellant raises the following issues for our review:

[1.] Whether the [trial] court erred in finding that the evidence presented at trial was sufficient to establish [] Appellant's guilt beyond a reasonable doubt as to [his convictions for drug delivery resulting in death and involuntary manslaughter?]

[2.] Whether the trial court abused its discretion in failing to provide sufficient funding for [] Appellant to hire a single expert witness for the purpose of contesting the most significant issue in this case (cause of death)?

[3.] Whether the trial court abused its discretion in denying Appellant's first request for a continuance of trial when [Appellant's counsel] was still attempting to obtain an expert witness and investigate recently received information immediately prior to [the commencement of] trial?

_____

[6] Appellant was sentenced to 6 to 12 months' incarceration, each, for the additional conviction of recklessly endangering another person (Count 9) and for the four convictions of criminal conspiracy to possess a controlled sentence with the intent to deliver (Counts 10 through 13)).  All five sentences for Counts 9 through 13 were to run concurrent to the consecutive sentence imposed for Count 3.

[7] Appellant filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and the trial court subsequently filed its Rule 1925(a) opinion.  In a January 16, 2020 per curiam order, this Court granted Appellant's request to file an amended Rule 1925(b) statement.  Appellant subsequently filed an amended Rule 1925(b) statement on January 28, 2020, and the trial court filed a supplemental Rule 1925(a) opinion on February 2, 2020.

Appellant's Brief at 4.[8]

Appellant's first issue raises a challenge to the sufficiency of the evidence to support his convictions of drug delivery resulting in death and involuntary manslaughter. Id. at 17-25. In addressing the merits of a sufficiency claim, our standard of review and scope of review are well-settled.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier[-]of[-]fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

Commonwealth v. Pappas, 845 A.2d 829, 835-836 (Pa. Super. 2004) (citation omitted), appeal denied, 862 A.2d 1254 (Pa. 2004). To preserve a sufficiency claim, Appellant's Rule 1925(b) statement must specify the element or elements upon which the evidence was insufficient. Commonwealth v. Williams, 959 A.2d 1252, 1257 (Pa. Super. 2008).

_____

[8] For ease of disposition, we reordered and renumbered Appellant's issues.

Section 2506(a) of the Pennsylvania Crimes Code defines the criminal offense of drug delivery resulting in death as follows:

> A person commits a felony of the first degree if the person intentionally administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance in violation of [Sections 780-113(a)(14) or (30) of The Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §§ 780-101 through 780-144,] and another person dies as a result of using the substance.

18 Pa.C.S.A. § 2506(a). In order to establish a conviction for drug delivery resulting in death, the Commonwealth must demonstrate that the defendant intentionally administered, dispensed, delivered, gave, prescribed, sold, or distributed a controlled substance, or a counterfeit controlled substance, and that the victim's death was caused by, or resulted from, the use of that substance. Commonwealth v. Burton, 234 A.3d 824, 830 (Pa. Super. 2020), citing Commonwealth v. Kakhankham, 132 A.3d 986 (Pa. Super. 2015), appeal denied, 138 A.3d 4 (Pa. 2016).

Section 2504(a) of the Crimes Code states, that "[a] person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person." 18 Pa.C.S.A. § 2504(a). In order to establish a conviction for involuntary manslaughter, the Commonwealth must demonstrate that the defendant's mental state was one of either recklessness or gross negligence, and that there was a causal connection between the defendant's conduct and the

victim's death.  Commonwealth v. Fabian, 60 A.3d 146, 151 (Pa. Super. 2013), appeal denied, 69 A.3d 600 (Pa. 2013).

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3).  The term "recklessly," as set forth in Section 302(b)(3), encompasses "gross negligence" for purposes of involuntary manslaughter.  Commonwealth v. Huggins, 836 A.2d 862, 868 (Pa. 2003), cert. denied, 541 U.S. 1012 (2004).

Here, Appellant, in challenging the sufficiency of the evidence to support his convictions for drug delivery resulting in death and involuntary manslaughter, argues that the "evidence does not establish proof beyond a reasonable doubt that [the victim's] consumption of [the] fentanyl [transdermal] patches that were sold by [] Appellant was the cause of death." Appellant's Brief at 20.  In so arguing, Appellant challenges the necessary element, for both crimes, that Appellant's unlawful act, namely the delivery of a controlled substance (a fentanyl transdermal patch) in violation of Section 780-113(a)(30), caused the victim's death.  See Amended Rule 1925(b) Concise Statement, 1/28/20, at ¶ 4 (stating, the criminal offense of drug delivery resulting in death "requires proof that the victim died as a result of ingesting drugs that were provided by [Appellant]") and ¶ 5 (stating, the

criminal offense of involuntary manslaughter "requires proof that the victim's death was caused by [Appellant's] delivery of drugs ingested by the victim").

According to Appellant, the victim's girlfriend testified that prior to the victim's death, she and the victim, each, consumed 50% of a fentanyl transdermal patch that she obtained from Appellant. Appellant's Brief at 18. Appellant asserts that a friend of the victim's girlfriend, who was also present at the time the fentanyl transdermal patches obtained from Appellant were consumed, stated that she and the victim received only 20%, each of a fentanyl transdermal patch for consumption while the victim's girlfriend consumed 60% of the fentanyl transdermal patch. Id. Appellant contends,

> The testimony presented at trial showed that [the victim's] fentanyl patch intake ([via the fentanyl transdermal] patches purchased from [] Appellant) the day prior to his death was either 50% of the second patch purchased on October 13, 2016, or a total of up to 83.3% of one fentanyl patch[, combined,] from both patches purchased on October 13, 2016[,] (up to 33.3% of the first patch, and 50% of the second patch). [A] Commonwealth witness[,] qualified as an expert in forensic pathology, testified that in order for the [victim's] blood concentration of fentanyl to be as high as it was (13 mg/ml), he would have had to [ingest] a minimum of [two] fentanyl patches, and more likely [three] or [four] patches. [A] Commonwealth witness[,] qualified as an expert in forensic toxicology, opined that it would be possible for [the victim's] blood concentration of fentanyl to have been produced by ingesting up to a total of one patch over the course of [several] days.

Id. at 19 (extraneous capitalization, record citations, and paragraphing omitted).

In so arguing, Appellant invites us to do nothing more than reassess the credibility of the testimony offered by the victim's girlfriend, the girlfriend's

friend, and the Commonwealth's two medical experts. Under the standard governing our review of a sufficiency challenge, an appellate court cannot reweigh the evidence and substitute its judgment for that of the jury, as fact-finder. As such, Appellant's first issue merits no relief. See Commonwealth v. Gibbs, 981 A.2d 274, 282 (Pa. Super. 2009) (reiterating, "a review of the sufficiency of the evidence does not include an assessment of the credibility of testimony" (citation omitted)), appeal denied, 3 A.3d 274 (Pa. 2010).

In his second issue, Appellant asserts that the trial court erred in providing only $1,500.00 for Appellant to retain the services of an expert medical witness to assist in his defense. Appellant's Brief at 26-31. Appellant argues that the amount provided was insufficient and, thus, Appellant was denied a fair trial. Id.

In criminal matters, our standard of review of challenges related to the appointment of an expert witness for the defense is as follows:

> The provision of public funds to hire experts to assist in the defense against criminal charges is a decision vested in the sound discretion of the [trial] court and a denial[,] thereof[,] will not be reversed absent an abuse of that discretion.

Commonwealth v. Cannon, 954 A.2d 1222, 1226 (Pa. Super. 2008), appeal denied, 964 A.2d 893 (Pa. 2009).

> It is well-established that indigent defendants have a right to access the same resources as non-indigent defendants in criminal proceedings. The state has an affirmative duty to furnish indigent defendants the same protections accorded those financially able to obtain them. Procedural due process guarantees that a

defendant has the right to present competent evidence in his defense, and the state must ensure that an indigent defendant has fair opportunity to present his defense.

Commonwealth v. Konias, 136 A.3d 1014, 1019 (Pa. Super. 2016) (citations and quotation marks omitted), appeal denied, 145 A.3d 724 (Pa. 2016). The Commonwealth, however, "is not obligated to pay for the services of an expert simply because a defendant requests one." Konias, 136 A.3d at 1020-1021 (citation omitted). Rather, the defendant must demonstrate "the content and relevancy of the proposed expert testimony before such a request will be granted." Commonwealth v. Curnutte, 871 A.2d 839, 842 (Pa. Super. 2005) (citation omitted). A request for an expert witness, whose necessity is based upon mere speculation as to the assistance the expert will provide to the defense, does not warrant the appropriation of public funds. Commonwealth v. Harris, 703 A.2d 441, 449 (Pa. 1997), cert. denied, 525 U.S. 1015 (1998).

Here, in support of his motion to appoint funds to retain a forensic pathologist, Appellant averred,

5.     [Appellant] wishes to retain an independent forensic pathologist [] to prepare a report and testify at [Appellant's] trial.

6.     [Appellant's counsel] already contacted [a forensic pathologist,] who is willing to assist [Appellant's counsel,] however, [the forensic pathologist] is requiring a $5,000[.00] retainer before being listed as a defense expert [witness].

7.     [Appellant's counsel] believes [] that in the course of effectively representing [Appellant] in his case, that [Appellant] is entitled to his own expert and retaining such

> an expert to review the cause of death and medical reports is necessary and essential to ensuring a constitutional[ly] fair trial.

Appellant's Motion to Appoint Funds to Hire a Forensic Pathologist, 1/16/18, at ¶¶ 5-7. Appellant asserts,

> The Commonwealth utilized $10,596.59 in expert witness fees for this trial. The trial court refused, on multiple occasions, to grant [] Appellant less than half of that amount ($5,000.00), instead only granting 14% of that amount ($1,500.00).

Appellant's Brief at 31 (record citation omitted). Appellant contends that a discrepancy allegedly existed between the victim's cause of death, acute drug toxicity, and the opinion proffered by the Commonwealth's expert witness that the cause of death was due to the ingestion of fentanyl. Id. at 26. Appellant argues that the appropriation of $5,000.00 was necessary to pay the retainer for a forensic pathologist that Appellant contends, "agreed to testify in the matter." Id. at 26-27.

In denying Appellant's request for the additional funding for an expert witness, the trial court stated,

> [Appellant] is requesting $5,000[.00] of public funds to obtain the services of [a forensic pathologist] to review the Commonwealth's expert's findings regarding the alleged victim's cause of death. [Appellant] does not assert that the Commonwealth's expert's findings are inaccurate, just that they might be and if the Commonwealth has an expert the defense should too, that [Appellant] is "entitled" to his own expert because he is facing a significant sentence. . . . The [trial] court [] already approved $1,500[.00] for [Appellant] to obtain medical guidance to review the tests performed on the alleged victim and to assist [Appellant's] counsel with trial preparation. The only reason set forth in the [m]otion to increase this amount is that [the forensic pathologist] wants a $5,000[.00] retainer.

Trial Court Opinion, 1/18/18, at 5. The trial court, in its Rule 1925(a) opinion, further explained,

> The [trial] court approved $1,500[.00] for [Appellant] to obtain expert review of [the victim's] medical and autopsy records regarding the cause of death. [Appellant] did not utilize these funds to obtain even an initial analysis. Instead[,] he generally requested approval for $5,000[.00]. He did not provide any indication of what the actual cost for a review of the records would be. His only explanation as to why $5,000[.00] should be approved was [] that the Commonwealth spent a lot more.

Trial Court Opinion, 2/7/20, at 10 (emphasis added).

Based upon a review of the record, we concur with the trial court that the necessity of the additional funds for a forensic pathologist to review the medical records, autopsy, and other findings related to the victim's cause of death and to potentially testify at trial, was based upon the mere speculation that the forensic pathologist would conclude that the victim's death was caused by something other than the ingestion of the fentanyl transdermal patches. Appellant offered neither a summary of the forensic pathologist's initial review of the case nor an offer of proof as to the underlying substance, or relevancy, of the forensic pathologist's conclusions. Moreover, Appellant offered no proof of the forensic pathologist's credentials necessary to demonstrate that he would qualify as a medical expert at trial or what the total estimate of cost would be for the forensic pathologist's services. The trial court provided Appellant ample opportunity to provide specificity as to the total cost of services and to demonstrate the content and relevancy of the

proposed testimony. Appellant was provided an initial sum of $1,500.00 for use in procuring the services of a medical expert to review the medical records but did not utilize the funding. Instead, Appellant requested additional funding without demonstrating "the content and relevancy of the proposed expert testimony" or the specific cost of the services. Therefore, we find the trial court did not abuse its discretion in denying Appellant's motion to apportion additional funding to retain the services of a forensic pathologist. Consequently, Appellant's issue is without merit.

Appellant's final issue challenges the trial court's order denying Appellant's request for a continuance of trial. Appellant's Brief at 21-25. Our standard of review of such a challenge is well-settled.

> A decision to grant or deny a continuance rests within the sound discretion of the trial court. We will not reverse a trial court's decision absent a showing of abuse of that discretion or prejudice to the defendant. An abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record.

Commonwealth v. Tucker, 143 A.3d 955, 966 (Pa. Super. 2016) (citation and brackets omitted), appeal denied, 165 A.3d 895 (Pa. 2017). "A bald allegation of an insufficient amount of time to prepare will not provide a basis for reversal of the denial of a continuance motion." Commonwealth v. Ross, 57 A.3d 85, 91 (Pa. Super. 2012), appeal denied, 72 A.3d 603 (Pa. 2013).

> [A]n appellant must be able to show specifically in what manner he was unable to prepare his defense or how he would have prepared differently had he been given more time. [An appellate

- 13 -

court] will not reverse a denial of a motion for continuance in the absence of prejudice.

Tucker, 143 A.3d at 966, citing Commonwealth v. Brown, 505 A.2d 295, 298 (Pa. Super. 1986).

Here, Appellant moved for a continuance on January 16, 2018, 20 days prior to the scheduled start date of his trial, asserting, that "in addition to the unavailability of [a forensic pathologist,] within the last few days, [Appellant's counsel] was provided with information that would, perhaps, exculpate [Appellant] as being the source of [the] fentanyl [transdermal] patches that alleged[ly] led to the death of [the victim] if said information is verified and reliable."[9] Appellant's Motion to Continue Trial, 1/16/18, at ¶ 8; see also Appellant's Brief at 21 (asserting, "more time was needed to obtain an expert witness and to investigate newly[-]obtained information about possible additional sources of fentanyl [transdermal] patches"). Appellant's counsel asserted that he was too busy to investigate the alleged newly-obtained information, and that upon the trial court's approval of funds to hire a private investigator, the private investigator would have less than two weeks to investigate the newly-obtained information prior to trial. Appellant's Motion to Continue Trial, 1/16/18, at ¶¶ 9, 12. Two weeks, Appellant contended, was insufficient time to "effectively locate and investigate various witnesses." Id. at ¶ 13. In his brief, Appellant argues,

_____

[9] The Commonwealth objected to the motion for a continuance of trial.

- 14 -

Had [] Appellant's omnibus pre[-]trial motion been granted, trial preparation would have been unnecessary or significantly different. . . . [I]t should have been abundantly clear in this matter that additional time would have assisted in preparation of a defense. First, the motions that were being filed by [Appellant's] counsel within three weeks of trial (request for private investigator, request for expert witness fees) showed that [Appellant's] counsel needed additional time to prepare for trial. Second, the statements made in the continuance request (need time to obtain expert witness and investigate newly[-]obtained information), made it clear that [Appellant's] counsel needed additional time to prepare for trial.

Appellant's Brief at 23-24.

In denying Appellant's motion for a continuance, the trial court explained,

[Appellant] asserts in his request for a continuance that more time is needed for his forensic pathologist to prepare a report and be available for trial. At this point, based on the [trial] court's ruling on the request for funds to obtain the services of [the forensic pathologist,] it is questionable if [the forensic pathologist's] services will in fact be retained. Therefore, it would be inappropriate to continue this trial due to the unavailability/unpreparedness of a witness who may not be called. Also, the timing of the continuance request raises concern. This case has been listed for trial since November 17, 2017. Therefore, it is unclear why efforts to address the obtainment of and report of a forensic expert and private investigator were not undertaken at an earlier date.

Regarding the potential that a private investigator may obtain evidence that could be beneficial to the defense regarding the source of the fentanyl [transdermal] patch(es), this possibility is too speculative at this time to warrant the grant of a continuance. If [Appellant's counsel] makes a request in the future that is supported by more specific assertions[,] the ruling on the request for a continuance would be reconsidered. . . . However[,] and again, at this point there is only [an] assertion that a witness may be found and he or she may have valuable information; and, that vague assertion does not support the grant of a continuance of trial.

Trial Court Opinion, 1/18/18, at 8-9 (extraneous capitalization omitted).

Based upon a review of the record, we concur with the trial court that Appellant's request for a continuance lacked sufficient specificity as to how the grant of additional time would benefit Appellant in preparation for trial. Appellant requested a continuance based upon the unavailability of a forensic pathologist, who may testify on Appellant's behalf, and because two weeks, in Appellant's opinion, was insufficient time to permit an investigation of the alleged newly-obtained information that may exculpate Appellant. In presenting his request, Appellant failed, however, to demonstrate that the forensic pathologist agreed to testify on behalf of Appellant absent the payment of a $5,000.00 retainer. Additionally, Appellant baldly asserted that two weeks was insufficient to permit an investigator to complete an inquiry of the alleged newly-obtained information that may have demonstrated that the fentanyl transdermal patches, which resulted in the victim's death, were obtained from a source other than Appellant. Appellant also failed to demonstrate that an investigator, who had not yet been hired or begun his or her investigation, was unable to make sufficient inquiries into the veracity and validity of this newly-obtained information prior to trial. The trial court, in denying Appellant's request for a continuance, left open the possibility of reconsideration of Appellant's request provided Appellant demonstrated, with specificity, why additional time was necessary and how the additional time would benefit Appellant, which Appellant failed to do. Therefore, the trial court

did not abuse its discretion in denying Appellant's motion for a continuance of trial. Consequently, Appellant's issue is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2020